# Court of Appeals.

*January,* 1886.

## PEOPLE *v.* MURPHY.

(Reversing 3 *N. Y. Crim. Rep.* 338.)

COMMUNICATIONS TO PHYSICIAN PRIVILEGED — CODE CIV. PRO. § 834; CODE CRIM. PRO. § 392.

The prohibition of section 834 of the Code of Civil Procedure against the disclosure by a physician of any information which he acquired in a professional capacity and which was necessary, to enable him to act in that capacity, applies to crimin alactions. Pierson *v.* People, 79 *N. Y.* 424, distinguished.

A physician was selected and sent to the patient by the district attorney, and she accepted, and he rendered his services in his professional capacity. *Held,* that the physician could not disclose what he learned from her while thus in professional attendance.

The physician who attended the girl upon whom an abortion had been performed, was asked upon the trial of the prisoner for causing the abortion : "On the personal examination that you made of the woman, and the fœtus, and the history of the case as you got it from her, what do you now say as to whether or not there had been an abortion brought about by artificial means?" The history of the case had not been given in evidence. Defendant's objection was overruled and the question answered. *Held,* error, as the evidence called for was the opinion of an expert that a crime had been committed, founded upon a narrative of the patient of previous facts, which narrative was itself inadmissible and remained undisclosed.

APPEAL by William T. Murphy, defendant, from a judgment of the General Term of the Supreme Court in the Fifth Department, of July 23, 1886, affirming a judgment of the Court of Sessions of Monroe county, convicting defendant of abortion.

The facts appear in the report of the case at General Term. 3 *N. Y. Crim. Rep.* 338.

*Stiles & Bennett* (*Horace L. Bennett,* of counsel), for defendant, appellant. (For points see 3 *N. Y. Crim. Rep.* 340.)

*J. W. Taylor*, district attorney, for the people, respondents —
I. The evidence of Mrs. Pitcher and Dr. Herriman, showing
the condition of the woman after the operation was performed
upon her, was properly received.   By the confessions of the
defendant his guilt was plainly proven.   But the Code of
Criminal Procedure (§ 395) provides that a confession shall not
warrant a conviction "without additional proof that the crime
charged has been committed."   For the purpose of complying
with that requirement the evidence was offered.   If the con-
dition of the woman tended to show that an abortion had been
performed upon her, then the evidence was properly received.
People *v.* Vedder, 3 *N. Y. Crim.* 23 ; affirmed, 3 *Id.* 32.   The
condition and symptoms of the woman did tend to show the
commission of an abortion upon her.   It is only from the ap-
pearance and symptoms of a sick person that the malady from
which that person is suffering can be discovered.   Evidence
showing the nature of such symptoms is always admissible,
whether derived from observation or from the statements of the
person.   1 *Greenl. on Ev.* § 102 ; Averson *v.* Lord Kinnaird, 6
*East.* 192 ; Morrissey *v.* Ingham, 111 *Mass.* 63 ; People *v.* Wil-
liams, 3 *Park.* 100 ; Barber *v.* Merriam, 11 *Allen*, 324 ; Pierson
*v.* People, 79 *N. Y.* 424 ; *Roscoe's Crim. Ev.* 7th ed. 27–29 ;
Insurance Co. *v.* Moseley, 8 *Wall.* 397 ; State *v.* Gedick, 43 *N.
J. L.* 88.

II. The physician, Dr. Herriman, was not prohibited from
testifying by section 834, Code Civil Procedure.   *a.* If section
834 of that Code is applicable to criminal trials, then the ques-
tion has already been decided adversely to this defendant.
Pierson *v.* People, 79 *N. Y.* 424.   *b.* But, in criminal actions,
the information obtained by a physician from his patient is not
privileged from divulgement.   Such was the rule at common
law.   1 *Greenleaf's Ev.* § 248.   The rule prohibiting the dis-
closure of such information was created by statute.   3 *R. S.*
6th ed. 671, § 119.   But the provision contained in the Revised
Statutes has been expressly repealed.   1 *Laws* 1880, chap. 245.
The disclosure of such information is prohibited, therefore, by
section 834, Code Civil Procedure, if at all.   The Code of Civil
Procedure has no application to criminal actions.   Section 832

of that Code, prior to 1879, when an amendment thereto was adopted, expressly making it applicable to criminal actions, was as follows: " § 832. A person who has been convicted of a crime or misdemeanor is, notwithstanding, a competent witness." .... This court has said of that Code: "We think it very clear that this Code was intended to apply only to civil actions and proceedings, except where otherwise provided." Perry *v.* People, 86 *N. Y.* 357. But it is argued for the appellant that section 934 governs in criminal as well as civil actions, because section 836 enacts that "The last three sections apply to every examination of a person as a witness," and section 392 of the Criminal Code enacts that "The rules of evidence in civil cases are applicable also in criminal cases." Section 836, Code Civil Procedure, is not more general or comprehensive in terms than section 832, or any other of the sections cited, and does not extend the application of section 834 beyond civil actions. Section 392, Code Criminal Procedure, is but an old statute re-enacted. 3 *R. S.* 6th ed. 1029, § 19; People *v.* Restell, 3 *Hill,* 295. The same rule prevailed at common law; also, " the general rules of evidence are the same in criminal and in civil proceedings." *Roscoe's Crim. Ev.* 1. Again, the section of the Code in question establishes, not a rule of evidence, but of practice. To say that the statute which disqualified a convict from testifying was a rule of evidence, is absurd. So, also, to say that section 834 is a rule of evidence. It follows that section 292, Code Criminal Procedure, is of no avail. The section of the Code of Civil Procedure being inapplicable to criminal actions, the common law rule must prevail. The physician was properly permitted to testify.

III. The physician, Dr. Herriman, was properly permitted to give his opinion, based upon what he learned from observation as well as what the woman told him. Before the opinion of the physician was asked he had given in detail the condition of the woman as he learned it from the examination he made upon her person, and had testified that he had a conversation with her, in which she told him her feelings and condition. It had also been shown that the foetus introduced in evidence had

passed the woman. Then the following question was asked of the doctor: "On the personal examination that you made of the woman and of the fœtus, and the history of the case as you got it from her, what do you say now, as to whether or not there had been an abortion brought about by artificial means?" It was objected that the question involved the history of the case, which had not been disclosed. Thereupon the offer was made to disclose it, and the witness was asked to state what the girl had said to him. To this offer it was objected, that the statements of the girl were hearsay, and upon that objection those statements were excluded. Nevertheless, the witness was permitted to answer the main question, and his answer was that an abortion had been produced. The ruling was right. The physician was simply asked to state the malady with which the patient was afflicted. That inquiry was plainly within the province of medical skill and science. The opinion of the physician, based upon facts within his own knowledge and observations, was clearly admissible. Matteson *v.* N. Y. C. R. R., 35 *N. Y.* 492; Maine *v.* People, 9 *Hun*, 113–117; ·Caldwell *v.* Murphy, 11 *N. Y.* 416; Werely *v.* Persons, 28 *id.* 344; Brown *v.* N. Y. C. R. R. Co., 32 *id.* 603. It is, however, urged by the defendant that the physician should not have been allowed to express an opinion upon facts not disclosed. Those facts should have been disclosed. But the defendant having, by his own act, procured the exclusion of the evidence, he cannot now be heard to complain that he was prejudiced thereby. It is also claimed that the cross-examination of the physician shows that his opinion was based in part upon what the girl told him had been done to her. The question asked of the physician proper, though, perhaps, inartistic in its phraselogy. The people were entitled to the answer at the stage when it was given. If it was subsequently made to appear that the evidence was improperly admitted, the remedy was by motion to strike it out.

FINCH, J.—We are of opinion that § 834 of the Code of Civil Procedure is applicable to criminal actions, and that whatever possible doubt may have attended the question is fairly dispelled by § 329 of the Code of Criminal Procedure. The con-

fidential character of disclosures by a patient to his attending physician was established before the Code by statute, and in terms which, beyond reasonable question, applied to all actions whether civil or criminal. 3 *R. S.* (6th ed.) 671, § 119; People *v.* Stout, 3 *Park*, 670. That statute was substantially incorporated into the civil Code, in language broad enough to justify the same general application as that which characterized the older statute, and the further provision of the Code of Criminal Procedure already referred to seems to us intended to settle the question. No doubt upon that subject was intimated in Pierson *v.* People (79 *N. Y.* 424); but in that decision the statute was construed, and we held it did not cover a case where it was invoked solely for the protection of a criminal, and not at all for the benefit of the patient, and where the latter was dead so that an express waiver of the privilege had become impossible. The present is a different case. Here the patient was living, and the disclosure which tended to convict the prisoner inevitably tended to convict her of a crime, or cast discredit and disgrace upon her. We have no doubt upon the evidence that between her and the witness whose disclosure was resisted, there was established the relation of physician and patient. Although he was selected by the public prosecutor and sent by him, yet she accepted his services in his professional character, and he rendered them in the same character. She was at liberty to refuse and might have declined his assistance, but when she accepted it she had a right to deem him her physician and treat him accordingly. It follows that the exception to his disclosure of what he learned while thus in professional attendance was well taken. But if his evidence had been admissible as being competent, another error was committed. He was sent to the patient after the crime was complete, when the abortion had been accomplished, and the patient was merely suffering the physical consequences of the crime. Although she herself was a party to that crime, and relating to it, was an accomplice of the accused, and, so to speak, a co-conspirator with him, yet her declarations, narrative of a past occurrence, and constituting no part of the *res gestæ* were not admissible. These declarations were excluded by the court upon the objection of the accused

and properly excluded. But, notwithstanding, the attending physician was allowed to express his opinion as a medical expert that an abortion had been produced, founding that opinion not only upon what he observed of the physical condition of the woman, but upon all her statements, and upon the history of the case as derived from her. The opinion of the General Term concedes the error of such evidence, but insists that the opinion was founded upon her statements merely of "the locality of the pain, the condition of the injured parts and so on." We understand what occurred differently. When the witness was first asked his opinion whether the birth occurred from natural or artificial causes, he inquired whether, in giving his answer, he would be allowed to consider the clinical history of the case as he got it from the girl's statement, to which the prosecutor replied: "Certainly; I ask the question upon the whole history of the case as you learned it from her as well as from the examination." To this the prisoner objected. The court did not at once pass on the objection but suggested that the physician answer first from his observation alone. He did so answer, and said: "From my physical examination of the woman and the fœtus it would lead me to believe that an abortion had been induced," and then added as a reason that natural miscarriages were not likely to occur at that stage of pregnancy with the frequency of earlier stages. How weak this evidence was upon the vital point whether the miscarriage arose from natural or artificial causes was made apparent on the cross-examination, where, in answer to the direct question, "whether or not from such physical examination as you describe you made there, is it possible as a matter of medical knowledge, science and experience to say that a miscarriage had been produced?" The witness felt constrained to answer: "No, sir." The prosecutor, apparently feeling the need of adding some decisive force to the opinion, followed his first inquiry with this question: "On the personal examination that you made of the woman and the fœtus, and the history of the case as you got it from her, what do you say now as to whether or not there had been an abortion brought about by artificial means?" To this question the prisoner's counsel objected, as calling for hearsay and a privi-

leged communication, and on the further ground that it involved "the history of the case" which had not been disclosed. The district attorney offered to disclose it, and put the question what the girl said, which was objected to and excluded. Thereupon the court overruled the objection, and the witness answered: "I say an abortion had been produced." It is not possible on this state of facts to say justly that by the history of the case and the girl's statement was meant only her complaints of present pain and suffering. Nothing of the kind was suggested or pretended, or could have been understood by court or witness or jury. Indeed, on cross-examination, the witness described what he meant by the "clinical history of the case," saying: "I wrote down part of her statement and testified to it in the police court, and that included how she came there and what happened since she came to that house." So that the opinion of the expert that a crime had been committed, founded upon the narrative of the woman of previous facts, which narrative was itself inadmissible and remained undisclosed, was given to the jury. Necessarily it carried with it damaging inferences of what that narrative in fact was, and drove the accused to the alternative of omitting all cross-examination as to the concealed basis of the opinion or admitting inadmissible evidence.

We think there was error for which the judgment should be reversed and a new trial granted, and the proceedings remitted to the Court of Sessions of Monroe county for that purpose.

All concur.