THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN M. SCHUYLER, APPELLANT.

*Evidence — when a physician, employed by the county to attend all the patients confined in a jail, may answer a hypothetical question as to the sanity of one of them on his trial for murder.*

Upon the trial of the defendant for murder in the first degree, his sole defense was insanity. Upon the trial, Dr. Babitt, who was employed by the board of supervisors to treat such of the prisoners confined in the jail as required medical aid, was called and testified that he had examined and prescribed for the defendant several times between the date of the homicide, July 2, 1885, and December 1, 1885, while acting as jail physician, and that he regarded the defendant as his patient.

In answer to a hypothetical question, put to him by the people, he testified that, in his opinion, the facts assumed by the question indicated sanity. The question did not assume the existence of any fact which related to defendant's physical or mental condition, or conduct, while in jail; nor did it assume the existence of any fact which the witness could have learned while attending the defendant in a professional capacity, but

simply called upon him to give his opinion, based exclusively on facts which were assumed to have occurred before the defendant was known to the witness.

*Held,* that an objection to the admission of the evidence, upon the ground that it was incompetent under section 834 of the Code of Civil Procedure, was properly overruled.

Another physician testified that he was appointed to act as jail physician in December, and continued to act as such down to the time of the trial; that he saw the defendant, as he did the others, whenever he needed it; that he assumed the obligation of attending to patients in the jail. He was then asked and allowed, against the objection and exception of the defendant, to answer the same hypothetical question.

*Held,* that, as the evidence did not show that the relation of physician and patient actually existed, the mere fact that the witness was the jail physician, charged with the duty of observing and treating this and all other prisoners, did not render his opinion incompetent.

After the witness had answered the hypothetica. question, he said that he did not think it possible for him to answer it without being influenced by the opinion formed while acting as defendant's physician.

*Held,* that this did not render his testimony incompetent.

That if it had appeared that the actual relation of physician and patient had, at some time, existed, and the witness had then expressed a doubt about his ability to answer the hypothetical question without being influenced by privileged information, a debatable question would have been presented. (Per FOLLETT, J.)

APPEAL from a judgment of the Court of Oyer and Terminer of Otsego county, convicting the defendant of the crime of murder in the first degree.

*Samuel S. Edick,* for the appellant.

*Clarence L. Barber,* for the people, respondent.

FOLLETT, J.:

Appeal from a judgment convicting the defendant of murder in the first degree. At the date of the homicide the defendant, aged about twenty-seven years, occupied a dwelling-house at Morris, with his wife, aged twenty-three years, and their two children, Amy, aged about three years, and Lizzie, aged about eighteen months. The defendant was a barber and occupied a shop in the business part of the village, a little distance from his dwelling. Between one and two o'clock in the afternoon of July 2, 1885, he went from his shop to his house for his dinner. While at dinner he and his wife engaged in a quarrel, during which he knocked her down with

such force that blood flowed from ner head. Soon after she escaped into the door-yard, leaving the defendant and the two children in the house. The eldest child began to cry and the defendant stepped outside of the door and called upon his wife to return and care for the children, which she refused to do so long as he remained there. He replied that he would care for or kill the children (the witnesses do not precisely agree as to the words of this remark), entered the house and immediately returned carrying the eldest child by its ankles, its clothes hanging down over its head, and swung the child over his head, striking its head against a section of a log used as a chopping block which stood near the door. This blow was twice repeated — he striking in all three blows, which killed the child.

The defendant was indicted for murder in the first degree. Upon the trial the killing was conceded, and there was no material conflict in respect to the circumstances of the killing. Insanity was the defendant's sole defense. From the date of the homicide, July 2, 1885, to the date of the trial, June 2, 1886, the defendant was confined in the jail of Otsego county. From July 2, 1885, to December 1, 1885, Doctor Otis H. Babbitt was employed by the board of supervisors to treat such of the prisoners confined in jail as required medical aid, and he was called the jail physician. From December 1, 1885, to the date of the trial, Doctor Wilson T. Bassett was the jail physician. These physicians were sworn in behalf of the people, and, in answer to a hypothetical question, testified that, in their opinions, the facts assumed indicated sanity. It was objected, in behalf of defendant, that these physicians were incompetent, under section 834 of the Code of Civil Procedure, to answer this question, which was overruled

These rulings are chiefly relied upon by defendant's counsel as grounds for a reversal of the judgment. In considering these rulings it is well to have the words of the section in mind. "Sec. 834, A person, duly authorized to practice physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity."

Doctor Babbitt testified that he examined and prescribed for the defendant several times while jail physician and regarded defendant as his patient. The hypothetical question did not call upon the

witness " to disclose any information which he acquired in attending a patient in a professional capacity." The question called for an opinion not for facts, and the answer disclosed no facts, nothing but an opinion. The question did not assume the existence of a fact which related to defendant's physical or mental condition or conduct while in jail, nor did it assume the existence of any fact which the witness could have learned while attending the defendant in a professional capacity, but the witness was called upon to give his opinion, based exclusively on facts which were assumed to have occurred before defendant was known to the witness. It seems a work of supererogation to attempt to demonstrate that the question is not prohibited by the section quoted, unless it must be held, as a matter of law, that this witness was incapable of excluding from his consideration facts learned or opinions formed while attending the defendant, and giving an opinion founded exclusively upon assumed facts which might be deemed to relate to another person as well as to the defendant. The witness testified that he could exclude from consideration all information acquired in attending the defendant, and form and give an opinion upon the facts assumed, and this court cannot declare, as a question of law, that he could not.

Persons who have opinions in respect to the guilt or innocence of a defendant, formed from reading or hearing accounts of the alleged crime, are competent to sit as jurors if it be established to the satisfaction of the court that they are capable of divesting themselves of the opinion so formed and of rendering an impartial verdict on the evidence. In the case of a juryman his opinions are not formed from personal observation, while in the case at hand the witness may have derived an opinion or impression from personal observation, and in this respect the questions are not analogous. But the defendant did not show, directly or inferentially, that the witness had formed an opinion, as to the sanity of the defendant, from information acquired while attending him, and the question was not brought within the section. (*Edington* v. *Ætna Life Ins. Co.*, 77 N. Y., 564–571.)

Doctor Wilson T. Bassett had been jail physician since December 1, 1885, and was when he testified. The following is the only evidence descriptive of the relations existing between the witness and the defendant.

Q. Are you the physician to the jail? A. I am; was appointed last November and commenced my duties some time fore part of December, I think, and have continued as such from that time down to the present; I see to the defendant as I do to the others whenever he needs it; I assume obligation of attending to those patients in the jail; the defendant is one of them whenever he requires attendance; and that relation still exists." This evidence was drawn out by the defendant upon which to found the objection that the witness was incompetent to testify under the section above quoted.

There is no evidence in the case that defendant was ill while Doctor Bassett was jail physician; nor does the evidence disclose that the doctor examined, spoke with or prescribed for the defendant, unless such facts and the consequent relation of physician and patient should be inferred from the evidence above quoted. It is a familiar rule, that when evidence is objected to upon the ground that the witness is incompetent to give the evidence, it must affirmatively appear that the witness is incompetent, and the burden of showing incompetency is upon tho objector. (*Cary* v. *White*, 59 N. Y., 339; *Edington* v. *Ætna Life Ins. Co.*, 77 id., 571: *Steele* v, *Ward*, 30 Hun, 560.)

"Before information can be excluded under this statute, it must appear that it was such as the physician acquired in some way while professionally attending a patient; and it must also be such as was necessary to enable him to prescribe as a physician, or to do some act as a surgeon. It is not sufficient to authorize the exclu sion that the physician acquired the information while attending his patient; but it must be the necessary information mentioned. If the physician has acquired any information which was not neces- sary to enable him to prescribe, or to act as a surgeon, such informa- tion he can be compelled to disclose, although he acquired it while attending the patient; and before the exclusion is authorized, the facts must in some way appear upon which such exclusion can be justified." (77 N. Y., 569.)

The fact that the witness was the jail physician, charged with the duty of observing and treating this, and all other prisoners, does not render his opinion incompetent unless it affirmatively appears that the relation of physician and patient actually existed, and that

the information was acquired through, or for the purposes of that relation. The nominal relation of physician and patient, arising out of the legal duty of this physician, is not sufficient to exclude his opinions formed from his observations while such nominal relation only existed.

It will be observed that the witness did not give his opinion founded upon information acquired by him in any manner; but the opinion was founded solely upon a hypothetical question which assumed no facts which occurred subsequent to the day of the homicide. After the witness had answered the hypothetical question, he said that he did not think it possible for him to answer it without being influenced by the opinion formed while acting as defendant's physician. Much stress is laid by the defendant upon this answer. If it had appeared that the actual relation of physician and patient had at some time existed, and the witness had then expressed a doubt about his ability to answer the hypothetical question without being influenced by privileged information, a debatable question would be presented. In *Edington* v. *Ætna Life Insurance Company* (*supra*), a physician who attended the insured during 1862, and then ceased to attend him professionally, but frequently saw him from that time until 1871, when he died, was asked: (1.) " Was he cured when he left your hands ? (2.) In the month of May, 1867, in your opinion, was Wilbur F. Diefendorf (the insured), a man in good health and of sound body, and one who usually enjoyed good health ? (3.) Excluding any knowledge or information that you obtained while treating Diefendorf, and judging from his appearance from that time until 1867, what is your opinion as to whether he was a man in good health, of sound body, and a man who usually enjoyed good health ?" These questions were excluded at the trial, but were all held competent by the Court of Appeals. This case arose under the Revised Statutes, which is not different from the Code so far as the question under consideration is concerned. The third question above quoted calls for an opinion based upon information personally acquired by the witness, while the hypothetical question asked in this case removes the opinion asked for much further from the statute.

No error was committed in permitting Drs. Babbit and Bassett to answer the hypothetical questions or in refusing to strike out

the answer of the latter.  Many exceptions were taken by the defendant during the trial, but they are unimportant, and cannot be made plainer than by reading the evidence to which they relate. They are not discussed in the appellant's brief, and do not require discussion by this court.  The charge was full and clear, and the exceptions taken to it are without legal force.  It is urged that the verdict is against the evidence.  As before stated, the only defense was insanity.  The defendant was but twenty-seven years of age, was born and has always resided in this State.  It was not difficult to prove, with particularity, his history from birth.  It was shown that when defendant was about nine years of age he was confined to the bed and house for a few days.  The witnesses testified that they heard he had sunstroke.  His sister testified to a fight between other boys and the defendant when he was about seven years old, in which he was pounded with stones.  She testified that afterwards he had boils, or bunches on his head.  There is no evidence that he was cut or bruised in this affray, or that he suffered from any injury then received.  It was testified that, from time to time, the defendant suffered from severe attacks of headache.  It was proved that in June before the homicide defendant and one Fenton ran together upon a base-ball ground, cutting Fenton's head, and hurting both, but leaving no marks on defendant.  It is not claimed that the ordinary avocations of the defendant were interrupted by the accident.  Aside from the sickness and the injuries referred to, there is no evidence that defendant was ever otherwise sick or injured.  There is no evidence that defendant ever committed an insane or irrational act, or that he ever uttered an insane or irrational expression, except on the occasion of a fire he unnecessarily commenced to remove the blinds from a building.  Upon a hypothetical question, which assumed as facts the matter above referred to, and other unimportant circumstances not unusual in human life, and upon the atrocity of the act, four physicians testified that, in their opinion, the defendant was insane when he killed the child; but four other physicians testified that, in their opinion, he was not. These witnesses examined the defendant during the trial, and none of them testified that they discovered evidences of then existing insanity.  It may be said that any person who, from anger, so far loses self-control as to commit an act like the one for which the

defendant was tried is insane, or not in his right mind, but there is a broad distinction between such insanity and legal irresponsibility.

The judgment should be affirmed.

BOARDMAN, J., concurred.

HARDIN, P. J. :

I concur. *People* v. *Murphy* (101 N. Y., 126), does not aid the appellant. In that case the witness was allowed to give an opinion, founded upon what he observed, as to the physical condition of the woman, and upon her narration of the facts. Not so in this case.

Conviction and judgment of the Oyer and Terminer of Otsego county affirmed, and proceedings remitted to that court.