IN THE MATTER OF THE PROBATE OF THE ALLEGED LAST WILL AND TESTAMENT OF SUSAN W. FREEMAN, DECEASED.

*Proof of the capacity of a testatrix to execute a will — when the testimony of physicians signing the will at her request is admissible — Code of Civil Procedure, sec. 834 — an objection as to the testatrix age must state the specific defect with certainty.*

Upon the hearing of an appeal from a decree of a surrogate admitting a will to probate, it appeared that the two witnesses to the will were, at the time of signing the same, and had been for a long time prior thereto, duly authorized to practice, and had been practicing physic and surgery at Saratoga Springs; that, on the day the will was executed, the witnesses were each called to see the testatrix, and did so call and examine the testatrix professionally as to her mental condition on that day; that the will was read at their request by one of them; that neither of them had seen her before during her last sickness; that neither of them had, at any time prior thereto, acted as her family physician or treated her; that after signing the will the testatrix declared that the writing was her last will and testament, and requested each of the witnesses to execute the same as witnesses thereto. These witnesses were the only persons sworn upon the trial before the surrogate.

*Held,* that their testimony was properly received and that the decree should be affirmed. (WILLIAMS, J. dissenting )

That the relation of physician and patient did not exist in this case, as the testatrix, who was conscious and capable of acting, did not accept the services of the witnesses as physicians, nor were they employed to attend her in a professional capacity, and that the information acquired by them was not information acquired while attending a patient in a professional capacity, which was necessary to enable him to act in that capacity. (Per LEARNED, P. J.)

That the testatrix, by expressly requesting the physicians to be subscribing witnesses, in legal effect, expressly requested them to testify, at the proper time before the proper court, to the whole truth within their knowledge touching the matters material to be inquired of, in order to establish the probate of the will, and thereby expressly waived her privilege, if she had any, to prevent their giving such testimony. (Per LANDON, J.)

The surrogate found that the testatrix was of full age. Upon this appeal the appellants claimed that no proof was given on that point. The only objection taken by the contestants before the surrogate relating to this point was that the proponents had not shown that the testatrix was of the class of persons named in the statute as capable of executing a will.

*Held*, that this did not point out the specific defect in the proof. (WILLIAMS, J., dissenting.

APPEAL from a decree of the surrogate of Saratoga county, admitting to probate the will of Susan M. Freeman, deceased.

The two witnesses to the will were physicians and surgeons. These were the only witnesses sworn on the hearing, and the main question involved on this appeal is whether their evidence was properly received as to mental capacity, under section 834 of the Code of Civil Procedure. The case, as settled by the surrogate, contains the statement that the subscribing witnesses to the will were, at the time, duly qualified and practicing physicians and surgeons. Some evidence appears in the case on the subject, and the surrogate upon request of contestants, found, as a fact, in deciding the matter, that at the time of the execution of the will, the subscribing witnesses were, and for a long time prior thereto had been, duly authorized to practice physics and surgery, and had been so practicing the same.

Dr. Boyce testified, among other things, that he had heard, before the day of execution of the will, that the deceased was sick, and that at the time the will was executed he went to her place for the purpose of examining into her mental condition, and that he made such examination before the will was executed; that Dr. Hodgman was with him and in consultation as to her mental condition; that Mr. Pettit (named as executor in the will), came for him and was at deceased's place when the doctors were there, but not in the room of deceased with them; that Mr. McCall the attorney, who drew the will, was in the deceased's room with the doctors; that one of the doctors requested that the will should be read, and it was so read there; that he did not examine deceased's physical condition very closely; that she had an emaciated look to her face; looked in a feeble physical condition; weak; that witness had heard she had a cancer, but never saw it; that he was not her physician or surgeon at the time, and didn't prescribe for her, was not called, as he understood it, to prescribe for her; that he was not her family physician; that he made a charge for making the examination, upon his books,

to the attorney, McCall, which had been since paid; that he made the examination the same as he always did, when called upon to examine a person with regard to sanity, and after the examination the will was at once executed.

Dr. Hodgman testified, among other things, that he went to deceased's place for the purpose of making an examination of her mental condition, and did make the examination, just before the will was executed; that he made such examination by the means usually employed by physicians in determining as to the sanity of persons; and that sanity is determined to some extent by observation as to the looks and speech and conduct and general appearance of the person; that he asked that the will be read, and McCall, the attorney, handed the will to him and he read it; that he had not then been her family physician; had never treated her then, but did afterwards. And the surrogate found, as facts, upon the request of the contestants, in deciding the matter, that the subscribing witnesses were each of them called to see deceased, and did call and examine her professionally, as to her mental condition, on the occasion the will was executed, and before such execution, and that neither of them had seen her before during her last sickness. The case also contains the statement that deceased, at the time the will was executed, was sick, and the surrogate found, as a fact, that she had for some time been sick, and at the time the will was executed was in bed.

There seems to have been no proof in the case as to the age of deceased, and contestant at the close of the evidence moved to dismiss the proceedings and for a decree denying probate to the will, on the ground that proponents had not shown that deceased was of a class of persons named in the statute as persons capable of executing wills of real and personal estate. Upon request of contestants, the surrogate found the fact that there was no proof of deceased's age, but refused to find she was not competent, by reason of lack of age, to make a will of real and personal property. He also found that after signing the will the testatrix declared that the said writing was her last will and testament and requested the persons, who signed as witnesses, and each of them to execute the same as witnesses thereof and thereto. The surrogate refused, on request of contestants, to find no waiver, express or implied, by deceased, as to the doctors being witnesses to her will.

*J. W. Houghton*, *Willard J. Miner* and *A. S. Burdick*, for the appellants.

*W. B. French* for the respondents.

Learned, P. J.:

The relation of physician and patient is one of contract between the parties, the patient employing the physician to examine the patient's condition, and if necessary to administer remedies.

It has been classed among the confidential relations, such as that of trustee and *cestui que trust* and the like. Of course it is not necessary that there should be any administering of remedies. *Medicus optimus, medicamentum minimum.* But there must be an employment of the physician by the patient, except as herein-after stated. Thus in *People* v. *Murphy* (101 N. Y., 126), where the physician was selected by the public prosecutor and sent to attend upon the person, it was held that the relation of physician and patient was established, because that person accepted his services, and he rendered them in that character. There was, therefore, practically, an employment of the physician by the person who was held to have become his patient, although his compensation did not come from her. So, too, in the case of an infant, though the employment is made by the parent, and the infant be even incapable of acting, the relation of physician and patient is established.

The case might also be suggested of one who was unconscious and for whom friends employed a physician. No doubt, in such a case, the relation of physician and patient would be established, although the patient was unable to act for himself and others had acted for him. But nothing of that kind existed in this case. The deceased was conscious and capable of acting. She did not accept the services of these physicians, and they were not employed to attend her in a professional capacity. The information which a physician is for-bidden to disclose is that which he has acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity. (Code Civ. Pro., § 834.) Attendance on a patient means more than being in the same room; and acting in a professional capacity means acting in reference to that patient. A physician by merely being in the company of a person and observing his appearance, might be satisfied that the person was ill with

some disease, for instance, consumption, but this section would not forbid the disclosure of that opinion.

In *Grattan* v. *Insurance Company* (24 Hun, 43; S. C., 92 N. Y., 274); *Renihan* v. *Dennin* (103 id., 573), there could be no doubt that the physician was called to attend the patient professionally, and that the relation of physician and patient existed. But in the present case the physicians were not called to prescribe for the deceased or to advise as to professional treatment; nor did they so prescribe or advise. If the deceased, at the time of their visit, had been in great need of good medical advice, and they had given no advice; they would not have been chargeable with malpractice or neglect of duty; because they were not under any obligation to advise or to prescribe. Any advice or prescription would have been an improper act, because they were not the attending or consulting physicians, and they were under no obligation to her. If they had conversed with her as to her health, then, possibly, she might have conceived the idea that they were consulting physicians. And if, in such mistaken belief, she had stated anything as to her health, very possibly that might have come within the prohibition of this section. But there is nothing of that kind. There is no reason to believe that she thought them to be consulting physicians, or recognized them to be anything more than proper witnesses to her will.

The section implies that the physician is to do some act in his professional capacity. Of course, this act may be merely negative, that is, the physician may decide that no medicine is needed. But in this case these physicians were not to do, or to omit to do, anything for the deceased. The signing of the will as witnesses was not a professional act. I think there was no error in allowing these physicians to testify.

Another objection is that proof was not given of the age of the deceased. The surrogate finds that she was of full age. There appears to be no proof on that point. Probably it was assumed as a matter not disputed. No objection was taken by the contestants on this point. One ground of objection was that the proponents had not shown that the testatrix was of the class of persons capable of executing a will. But this did not point out the specific defect in the proof. If it was intended to be an objection on the ground that the age of the testatrix had not been proved, then it was expressed

in such a manner as to conceal its meaning. One object in requiring parties to take objections is to give the other side notice of the alleged defect. No such notice was here given. The petition for probate is not before us. That may have stated the age of the testatrix. The contesting allegation of the husband and heirs and next of kin set up no such matter.

If there be any defect in this respect, then this is a case where we should take the proof or refer the matter under section 2586.

LANDON, J.:

I advise affirmance, upon the ground that the testatrix expressly requested these physicians to be subscribing witnesses. She thereby, in legal effect, expressly requested them to do two things, first, to sign their names to her will as witnesses to this execution and publication ; second, to testify, at the proper time before the proper court, to the whole truth within their knowledge touching the matters material to be inquired of in order to establish the probate of the will.

Having expressly requested them to give this testimony, she expressly waived her privilege, if she had any, to prevent their giving it.

WILLIAMS, J. (dissenting):

I think it must be said upon the papers before us, for the purposes of this appeal, that the subscribing witnesses to the will were *persons authorized to practice physic and surgery*, within the provisions of section 834, Code of Civil Procedure. That fact was settled by the surrogate, so far as this appeal is concerned, by his settlement of the case, and his findings of fact, which respondents can not here question. I am of the opinion, also, that these persons in attending upon deceased, and making the examination they did as to her mental condition, were acting in a professional capacity, and that all the information they had as to her mental capacity, at the time they were used as witnesses on the trial, was acquired by them while making such examination of deceased as a *patient*, and which was necessary to enable them to act in such professional capacity. If this be true, then the prohibition of section 834 (above) applies, unless there had been a waiver on the part of deceased, which enabled the witnesses to testify.

It matters not that no prescription was made or intended to be made. The examination was evidently to enable the doctors to advise as to deceased's mental capacity to execute the will; nor does it matter that the doctors were called by the attorney and agent of deceased, instead of being called by herself personally. The relation of physician and patient clearly existed. (*Grattan* v. *Ins. Co.*, 24 Hun, 43; *People* v. *Murphy*, 101 N. Y., 126; *Renihan* v. *Dennin*, 103 id., 573.) Nor does it matter whether the information acquired was through the medium of conversation or a physical, manual examination, or by observation merely of her appearance and symptoms. However acquired, the information is covered by the provisions of section 834, above. (*Grattan* v. *Ins. Co.*, 92, N. Y., 287, and cases there cited.) The evidence was, it seems to me, clearly within section 834 (above) and was improperly admitted in proof of the mental capacity of the deceased to make the will, except upon the theory of a waiver of the privilege by deceased under the provisions of section 834 Code Civil Procedure. That section provides, so far as this case is concerned, that section 834 applies to every examination of a person therein described, as a witness, unless the provisions of that section are *expressly waived* by the *patient*. The waiver must be by the patient, and cannot be by personal representatives after death of the patient. (*Westover* v. *Ætna Life Ins. Co.*, 99 N. Y., 56.) In view of this decision it would seem difficult to establish an express waiver by a patient after the patient is deceased. The waiver could be made by no one except the patient, if not by the personal representatives of the patient, for the purpose of aiding in the recovery of insurance upon the life of the patient. EARL, J., in this case, says: " Whenever the evidence comes within the purview of the statutes, it is absolutely prohibited, and may be objected to by any one unless it be waived by the person for whose benefit and protection the statutes were enacted. After one has gone to his grave, the living are not permitted to impair his fame, and disgrace his memory, by dragging to the light communications and disclosures made under the seal of the statutes. An executor or administrator does not represent the deceased for the purpose of making such a waiver. He represents him simply in reference to rights of property, and not in reference to those rights which pertain to the person and character of the testator."

After the death of the patient, therefore, a waiver can be shown only by showing that the patient made the waiver before death. It is claimed that such a waiver was made by the deceased here when she asked these doctors to become witnesses to her will, and permitted them to be such. That by requesting and permitting them to become such witnesses she waived all objection to their testifying, which could otherwise have been made under section 834 above. This question does not seem to have been passed upon by the courts of this State. The only reference to it in the books seems to be in a note to *Renihan* v. *Dennin* (above, as reported in 18 Abbott's New Cases, 101), where the following language is used; "The mere fact of requesting medical men to attest the will as subscribing witnesses, and their doing so, appears to be as clear a waiver as could be made out without express words of waiver."

In order to constitute a waiver under such circumstances, certain things would need to appear, and unless they could be assumed or presumed, would need to be proven before the waiver would be established. She must have been in a condition of mind to act in the matter and to comprehend what she was doing. This ordinarily might be presumed, but there seems in such a case as this, to be an inconsistency in presuming sanity, in order to give effect to her acts as a waiver, and then permit the doctors to swear to the very fact already presumed, to wit, her sanity. It is difficult to see why the sanity should be presumed to establish the waiver any more than it should be presumed to establish the will. The same acts which constitute the making of the will are sought to be made use of to establish a waiver, so as to allow the proof of the will. Then it should appear that she was aware that these men were doctors, and that they had made a professional examination of her for the purpose of ascertaining her condition of mind, and whether she was sane or not. Can these things be presumed? There seems to have been no proof of these things. Even if from the evidence it may be spelled out that she knew they were doctors, there is nothing to show that she was aware any examination as to her sanity was being made or had been made when she requested them, and permitted them to be witnesses to her will. Can it be said the privilege did not exist. unless she knew the examination was being made? We cannot assent to such a proposition, and certainly she could not be regarded as waiving a

privilege which she did not know existed. To illustrate, suppose a patient is examined as to physical infirmities when temporarily unconscious from the effect of disease or narcotics, and does not know of the examination at all. Could she be said to have no privilege, or by any subsequent acts to have waived the privilege under section 834, which she did not know existed? Clearly she could not.

Then, again, it would need to appear that she understood the evidence necessary to be given by such witnesses when produced on proof of the will; that is, that they would necessarily be required to speak of her mental condition, and their opinion in reference thereto founded and based upon the examination made of her before the execution of the will. While we might ordinarily presume that a person had knowledge of the law, still we could hardly presume that a person knew the law to be as above stated, because it is *not* necessary that the witnesses to a will should give any evidence as to mental capacity of the testator at all. They *may* be examined upon the subject, and may, though not experts, express an opinion on the subject of mental capacity. (*Clapp* v. *Fullerton*, 34 N. Y., 190–195.) And it is the common practice, it may almost be said to be the uniform practice, to examine them on the subject, but it is not a necessary part of their examination. (*Whitfield* v. *Whitfield*, 19 W. D., 386.) Indeed, if the subscribing witnesses are incompetent by reason of lunacy, *or otherwise*, to testify, or have forgotten the occurrences, or testify against the execution of the will, the will may, nevertheless, be established by other proof. (Code Civil Pro., § 2620.) How, therefore, can it be said, because the testatrix requested these doctors to be witnesses to her w ll, that she necessarily waived the privilege given under section 834, above, so as to enable them to speak as to her mental capacity? How much less can it be said that such request amounted to an *express* waiver, such as is required by section 836, above, in order to make such witnesses competent to speak of mental capacity? At most it would amount to no more than an implied waiver. Webster defines *express* as "directly stated, not implied or left to inference; distinctly and pointedly given; made unambiguous by special intention; clear, plain." I am of opinion that, upon the evidence in this matter, no express waiver was established so as to make the subscribing wit-

nesses competent to testify as to the mental capacity of the testatrix
to make the will. They were competent to testify as to the formal
execution of the will, and it is claimed by the respondents, the
formal execution of the will having been established, it was unneces-
sary for the proponents to give any evidence of mental capacity of
the testatrix to make a will; that the contestants had the burden of·
proof of showing incapacity, and ·as they gave no evidence at all
the surrogate might and should presume the existence of mental
capacity, and admit the will to probate. I think this will not
answer. The Code of Civil Procedure provides (§ 2623): "If it
appears to the surrogate that the will was duly executed, and that
the testator, at the time of executing it, was in all respects com-
petent to make a will, and not under restraint, it must be admitted
to probate," etc. It seems the competency of the testator must be
made to appear to the surrogate. Such a provision would hardly
be complied with if nothing was shown at all, and the surrogate was
left to presume it from the absence of any evidence upon the subject.
The cases cited by respondents were none of them matters of proving
wills for the purpose of admitting them to probate. *Weed* v. *Insur-
ance Company* (35 Supr. Ct , 386), and *Coffey* v. *Insurance Company*
(44 How. Pr., 481), were actions to recover life insurance where the
questions of suicide and insanity were involved. *Jackson* v. *Van
Dusen* (5 Johns., 144) was an action of ejectment. In these cases
it was correctly held sanity was to be presumed as the natural con-
dition of the mind. The statute, however, above referred to did not
cover those cases, nor assume to control the trial of actions. The
statute relates alone to the admission of wills to probate, and under
this statute it has always been held that the proponent of a will must
in the first instance give proof of competency to make the will.
(*Kinsley* v. *Blanchard*, 66 Barb., 317; *Harper* v. *Harper*, 1 T. &
C., 351, 355.) And it has been held where the question of capacity
to make a will is in doubt, where the evidence is equally balanced,
the will should be denied probate. (*Rollwagen* v. *Rollwagen*, 63
N. Y., 504.) In this case EARL, J., says: "A party who offers
an instrument for probate as a will must show satisfactorily that
it is the will of the alleged testator, and upon this question he has
the burden of proof. If he fails to satisfy the court that the
instrument speaks the language and contains the will of the

testator, probate must be refused. The laws in reference to the distribution of the estates of persons dying intestate, are founded upon principles of public policy and justice, and must regulate the transmission of property unless a person before death has, in the mode prescribed by law, himself provided how his property, after his death, shall be disposed of." This question, of course, does not arise very often, because, as a matter of fact, the subscribing witnesses are uniformly asked and state as to the mental capacity of the testator. I think the policy of the law is to require affirmative evidence of mental capacity, either by the opinions of witnesses or by proof of circumstances, before admitting a will to probate. In this case there was no competent evidence before the surrogate of the mental capacity of the testatrix to make a will, and, therefore, upon the proofs given, the will was improperly admitted to probate. It is also questionable whether the surrogate should not have required proof of the age of the testatrix, or at least that she was of sufficient age to be competent to make a will under the provisions of the statute. So far as appears she was not twenty-one years or sixteen years of age. If she was not twenty-one years of age she could not devise real estate, and if not sixteen years of age she could not bequeath personal estate. (3 R. S. [7th ed.] 2283–2285.) Can age be presumed or must it be proven? The same section of the Code relates to this question as to the mental capacity of the testator, because, unless of proper age, the testator is not *in all respects competent to make a will.* It must appear to the surrogate that such competency exists before the will can be admitted to probate. And there seems to be the same reason, therefore, for requiring the proponent to prove the age as the mental capacity of the testatrix, in order to enable the will to be admitted to probate. This question was plainly raised, and the proponent persistently refused to make the proof. We have no doubt that the proper proof as to age could have been made, and we think it should have been in order to entitle the will to be admitted to probate.

The decree of the surrogate admitting the will to probate, I think, should be reversed, and a new trial ordered, to be held before a jury in the circuit of the Supreme Court.

Decree of the surrogate affirmed, with costs.