THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FRANK LAY, Defendant.*

County Court, Queens County, February 26, 1938.

*Charles P. Sullivan, District Attorney [J. Irwin Shapiro of counsel], for the plaintiff.*

*Fitzpatrick & Bell [Bernard H. Fitzpatrick of counsel], for the defendant.*

COLDEN, J. Motion by defendant to set aside verdict of conviction and for a new trial upon the ground of alleged error in the admission of evidence at the trial.

The defendant was indicted by a grand jury charged with the crime of assault, first degree, was tried on January 26, 1938, and was convicted of assault in the second degree. At his request sentence has been deferred to permit his attorney to make this application, to submit briefs, to argue the motion and to permit the court to consider and decide the motion.

The facts are simple. On the morning of October 2, 1937, the defendant met a married woman with whom he was acquainted and invited her into his sedan type automobile. She accepted his

* Affd., 254 App. Div. 372.

invitation, and he drove several miles to somewhat sparsely-settled location in the vicinity of Bayside, Queens county. The defendant shot the woman in the back with a revolver which he brought with him, and then the defendant drove his companion to the Flushing Hospital, arriving there about nine-twenty A. M. She was treated by Dr. Joseph Wickham, one of the senior surgeons of the surgical staff at the Flushing Hospital. At the trial the defendant vigorously opposed by timely objection and exception the introduction of any testimony by Dr. Wickham, and based such objections upon the provisions of section 352 of the Civil Practice Act, section 392 of the Code of Criminal Procedure, and upon the decisions of our appellate courts, particularly *People* v. *Murphy* (101 N. Y. 126) and *People* v. *Brower* (53 Hun, 217). The objections were overruled. Dr. Wickham testified that he examined the woman, found a bullet wound in her back, powder marks on the skin, and ascertained that a bullet was present in her body. She was bleeding profusely. She was given immediate treatment, including a saline transfusion, and thereafter Dr. Wickham removed the bullet, which was introduced in evidence. The woman recovered and was present, but did not testify at the trial.

Section 352 of the Civil Practice Act, in so far as is applicable to this case, provides that: " A person duly authorized to practice physic or surgery, * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."

Section 392 of the Code of Criminal Procedure, in so far as here applicable, reads as follows: " The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this Code."

In *People* v. *Murphy* (101 N. Y. 126) our Court of Appeals very definitely held that section 834 of the Code of Civil Procedure (now section 352 of the Civil Practice Act), is applicable to criminal actions. But, says that court (101 N. Y. 126, at p. 129): " No doubt upon that subject was intimated in *Pierson* v. *People* (79 N. Y. 424); but in that decision the statute was construed, and we held it did not cover a case where it was invoked solely for the protection of a criminal, and not at all for the benefit of the patient; and where the latter was dead so that an express waiver of the privilege had become impossible. The present is a different case. Here the patient was living, and the disclosure which tended to convict the prisoner inevitably tended to convict her of a crime, or cast discredit and disgrace upon her."

In *People* v. *Murphy* (*supra*) the charge was that of abortion. The testimony of the physician would directly involve the woman who was the patient and who was liable to prosecution because of her alleged participation in the abortion. The statute protects the patient and *People* v. *Murphy* so holds. As an incident another may also benefit from such a rule, but such benefit is incidental, not intentional.

In *People* v. *Brower* (53 Hun, 217, 219) the court, referring to section 834 of the Code of Civil Procedure, said: "We have no doubt that the statute, both in its letter and spirit, protects the confidence thus reposed in the physician and forbids him to betray it." *People* v. *Brower*, again, was a prosecution for manslaughter growing out of an attempted abortion performed by the defendant upon a woman with whom he had been living. After the woman's condition became serious the defendant engaged a physician to whom he told what had occurred. The woman died, and the defendant was prosecuted for manslaughter. Largely upon the testimony of the physician he was convicted. The conviction was reversed because of the admission of the testimony of the physician.

This same statute was considered in *Pierson* v. *People* (79 N. Y. 424). At page 433 the court says:

" There has been considerable difficulty in construing this statute, and yet it has not been under consideration in many reported cases. It was more fully considered in the *Edington* case (*Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185; *Edington* v. *Ætna Life Ins. Co.*, 77 N. Y. 564) than in any or all others. It may be so literally construed as to work great mischief, and yet its scope may be so limited by the courts as to subserve the beneficial ends designed without blocking the way of justice. It could not have been designed to shut out such evidence as was here received, and thus to protect the murderer rather than to shield the memory of his victim. If the construction of the statute contended for by the prisoner's counsel must prevail it will be extremely difficult, if not impossible, in most cases of murder by poisoning to convict the murderer. Undoubtedly such evidence has been generally received in this class of cases, and it has not been understood among lawyers and judges to be within the prohibition of the statute.

" How then must this statute be construed? The office of construction is to get a meaning out of the language used, if possible. If the words used are clear and unmistakable in their meaning, and their force cannot be limited by a consideration of the whole scope of the statute or the manifest purpose of the Legislature, they must have full effect. But in endeavoring to understand the meaning of words used, much aid is received from a consideration of the

mischief to be remedied or object to be gained by the statute. By such consideration, words otherwise far-reaching in their scope may be limited. Statutes are always to be so construed, if they can be, that they may have reasonable effect, agreeably to the intent of the Legislature; and it is always to be presumed that the Legislature has intended the most reasonable and beneficial construction of its acts. Such construction of a statute should be adopted as appears most reasonable and best suited to accomplish the objects of the statute; and where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the Legislature to avoid such consequence. A construction which will be necessarily productive of practical inconvenience to the community is to be rejected, unless the language of the law-giver is so plain as not to admit of a different construction. (Potter's Dwarris on Statutes, 202.)

" The plain purpose of this statute, as in substance before stated, was to enable a patient to make known his condition to his physician without the danger of any disclosure by him which would annoy the feelings, damage the character, or impair the standing of the patient while living, or disgrace his memory, when dead. It could have no other purpose. But we do not think it expedient, at this time, to endeavor to lay down any general rule applicable to all cases, limiting the apparent scope of this statute. We are quite satisfied with the reasoning upon it of Judge Talcott, in his able opinion delivered at the General Term of the Supreme Court, and we agree with him ' that the purpose for which the aid of this statute is invoked, in this case, is so utterly foreign to the purposes and objects of the act, and so diametrically opposed to any intention which the Legislature can be supposed to have had in the enactment, so contrary to and inconsistent with its spirit, which most clearly intended to protect the patient and not to shield one who is charged with his murder, that in such a case the statute is not to be so construed as to be used as a weapon of defense to the party so charged, instead of a protection to his victim.' "

Again, in *People* v. *Harris* (136 N. Y. 423, at p. 448), the same objection was raised, and the court says: " He insists that it was error to receive the testimony of Dr. Treverton, a witness for the People. He was uncle to the deceased; with whom she remained for some two months at Scranton and who operated upon her and removed a dead child of five months. The objection relates to his testifying to a conversation with the defendant and is based upon its being privileged, under that statutory prohibition which seals a physician's mouth, and upon it tending to prove the defendant guilty of another crime, namely, of abortion. The first ground of

objection is untenable for several reasons. In the first place, the witness was not employed by the defendant. In the second place, he acquired no important information from the defendant, or any which he was not already possessed of, or which was necessary for him in order to act in a professional capacity. Lastly, the statutory privilege was not conferred to shield a person charged with the murder of the patient; as was held in *Pierson* v. *People* (79 N. Y. 424). I should never be willing to assent to a construction, or to believe in a legislative intent, which would operate to convert a statutory provision protecting a patient from a damaging or objectionable disclosure, into a protection for a person on trial for the murder of the patient."

In the case at bar the defendant offered to call the woman who was shot by him to the witness stand while the question of the admissibility of Dr. Wickham was under discussion. It will be assumed that had she testified she would have refused to waive the provisions of section 352 of the Civil Practice Act.

The question thus squarely presented in this case, then, is whether or not a defendant who has shot another person may avail himself of the protection of section 352 of the Civil Practice Act, so as to seal the lips of the physician, unless the injured person waives the provisions of that section. Certain it is that in *People* v. *Murphy* (*supra*), an abortion case, the defendant was so protected. And in *People* v. *Brower* (*supra*), a manslaughter case resulting from an abortion, the defendant was afforded similar protection.

But in *People* v. *Harris* (*supra*) an entirely different view was taken, and I believe the application of the rule of privilege is to be determined by the reasoning of the opinion in *People* v. *Harris* (*supra*), where the court says (136 N. Y. 423, at p. 448): "*I should never be willing to assent to a construction, or to believe in a legislative intent, which would operate to convert a statutory provision protecting a patient from a damaging or objectionable disclosure, into a protection for a person on trial for the murder of the patient.*" (Italics mine.) Any other view certainly permits the gangster, or any other criminal, to seal the lips of physicians who attend the criminal's victim whenever sufficient pressure is brought upon the victim to induce him or her to refuse to waive the privilege. For the court to place such a weapon in the hands of criminals is unthinkable in the light of present-day conditions.

This view is reinforced by the provisions of section 1915 of our Penal Law, which says, in part: "*Every physician attending or treating a case of bullet wound  *  *  *   shall report such case at once to the police authorities.*" And the section provides that failure to make such report is a crime.

Thus, by express statutory enactment, the physician is compelled to divulge the so-called privileged information to the police authorities, and such disclosure is, of course, for the purpose of investigation and, where crime is indicated, prosecution. Hence we have waiver by the law of our State.

It follows that by reason of the decision in *People* v. *Harris* (*supra*) and the express provisions of section 1915 of the Penal Law, as well as by the dictates of common sense, the testimony of Dr. Wickham was admissible. The motion is denied. The defendant will be sentenced on Monday, February 28, 1938, at two P. M.