ALICE A. DAVIS, Respondent, *v.* SUPREME LODGE, KNIGHTS OF HONOR, Appellant.

1. EVIDENCE — PRIVILEGED COMMUNICATIONS — TESTIMONY OR CERTIFICATE OF PHYSICIAN AS TO CAUSE OF DEATH. The testimony of an attending physician, who has no knowledge on the subject except such as he acquired in his professional capacity, when the relation of physician and patient existed, and also his certificate filed with a city board of health, as to the cause of death of certain relatives of the insured, are inadmissible under section 834 of the Code of Civil Procedure, in an action upon a policy of life insurance defended upon the ground of a breach of warranty that such relatives had not died of consumption.

2. SECTION 834 OF THE CODE OF CIVIL PROCEDURE NOT REPEALED BY SECTION 1172 OF THE CHARTER OF THE CITY OF NEW YORK. The prohibition, by section 834 of the Code of Civil Procedure, of the statement of an attending physician as to knowledge acquired in his professional capacity, as applied to a certificate, filed by him with a city board of health, stating the cause of his patient's death, is not, either expressly or impliedly, repealed by section 1172 of the charter of the city of New York (L. 1897, ch. 378), providing, among other things, that copies of records of the proceedings of the board of health, of its rules, regulations, ordinances, by-laws and books and papers constituting part of its archives, when authenticated by its secretary, shall be presumptive evidence, and the authentication taken as presumptively correct in any court of justice or judicial proceedings, when they may be relevant to the point or matter in controversy, of the facts, statements and recitals therein contained.

*Davis* v. *Supreme Lodge, K. of H.,* 35 App. Div. 354, affirmed.

(Argued November 15, 1900; decided December 11, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 17, 1898, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. R. Spooner* for appellant. Defendant offered at the trial the death records from the Brooklyn health department

of certain relatives of the deceased, and sought also to prove the cause of death by their attending physicians, all of which proofs should have been admitted in evidence. (*Hanna* v. *C. M. L. Ins. Co.*, 150 N. Y. 526; *M. B. L. Ins. Co.* v. *Higginbotham*, 95 U. S. 380; 2 Bacon on Ben. Societies, 947, § 471.)

*Herbert A. Heyn* for respondent. The questions put to Dr. Botkin and Dr. Silberman, the attending physicians of the aunts of the insured, regarding the last illness of their respective patients, were properly excluded. (*Grattan* v. *M. L. Ins. Co.*, 80 N. Y. 281; *Renihan* v. *Dennin*, 103 N. Y. 573; *Redmond* v. *I. B. Ins. Co.*, 150 N. Y. 167; *Westover* v. *A. L. Ins. Co.*, 99 N. Y. 56; *Nelson* v. *Village of Oneida*, 156 N. Y. 219; *Dilleber* v. *H. L. Ins. Co.*, 69 N. Y. 256; *Grossman* v. *Supreme Lodge*, 53 Hun, 637; *Jones* v. *B. R. R. Co.*, 3 N. Y. Supp. 253; *People* v. *Koerner*, 154 N. Y. 363; *People* v. *Hoch*, 150 N. Y. 303.) The original records of the board of health, said to show the death of two women by name of Cecilia Burns and Josephine Daley, and the transcripts therefrom, which were offered by the defendant for the avowed purpose of proving the cause of death of these two women, were properly excluded. (*Farnum* v. *Hotchkiss*, 2 Abb. Ct. App. Dec. 93; *Van Buren* v. *Wells*, 19 Wend. 203; *Martin* v. *Stoddard*, 127 N. Y. 61; *Hosley* v. *Black*, 28 N. Y. 438; 1 Kent Comm. 463; *Jones* v. *City of Albany*, 151 N. Y. 223; *White* v. *Wager*, 25 N. Y. 328; *R. R. Co.* v. *Roach*, 80 N. Y. 344; *People* v. *Jaehne*, 103 N. Y. 187; *Hayden* v. *Pierce*, 144 N. Y. 512; *McKinley* v. *M. L. Ins. Co.*, 58 N. Y. S. R. 122.)

O'BRIEN, J. The defendant is a fraternal association incorporated under the laws of this state, with power to make contracts with its members for the payment of a sum of money to any beneficiary named in the contract upon the death of the member. The plaintiff's husband applied for membership in the association, was admitted and received a certificate on the 19th day of July, 1895. In this certificate the defendant

agreed to pay to the plaintiff the sum of two thousand dollars upon satisfactory proof by her of the death of her husband, and that at the time of his death the certificate or contract was in force.   On the 16th of October, 1896, the plaintiff's husband died, and she presented to the defendant sufficient proofs of death in accordance with the constitution and by-laws of the defendant.   But it refused to pay the money specified in the certificate, upon the death of the member, which was two thousand dollars, and the plaintiff thereupon brought this action to recover that sum, with interest.

The principal defense interposed was a breach of warranty, in that plaintiff's husband, in his application for membership, stated that neither of his parents or any of his paternal or maternal grandparents, or any of their descendants, so far as he knew, had consumption.   The issues presented by the answer were issues of fact, and the jury found a verdict for the plaintiff, which was unanimously affirmed at the Appellate Division.   Thus all questions of fact and all questions as to the sufficiency of the evidence to warrant the verdict of the jury are eliminated from the case.   The only questions presented by this appeal are those that arise out of the defendant's exceptions taken upon the trial.   The defendant had a right at the trial to give proof tending to show that the statement contained in the application for membership, which has already been referred to, was untrue, and it had a right to prove, if it could, that either of the parents of the member, or his paternal or maternal grandparents, or any of their descendants, had been afflicted or had died of the disease known as consumption.   The defendant did attempt to prove that fact, and the ruling of the learned trial court excluding certain evidence offered upon this issue, to which exception was taken, is the only substantial question which the learned counsel for the defendant has argued in this court.   Although there are at least three exceptions in the record raising this question, yet they were all taken to the exclusion of proof of the same character and they may be properly considered and treated as one.

21

The defendant's counsel proved the death of two of the aunts of the deceased member who had procured the certificate in question, and he then attempted to prove that both died of consumption. This fact, if established, would so far constitute a defense to the action, since the aunts of the deceased member were included in the statement that none of the descendants of the applicant's grandparents had or died of consumption. The defendant's counsel called a physician, who testified that he had attended one of the aunts in her last illness. He was asked to state what her last illness was and whether or not she ever had or suffered from consumption. This testimony was objected to as inadmissible, under section 834 of the Code, and was excluded, to which ruling the defendant's counsel excepted. The defendant's counsel then called another physician, who testified that he had attended another aunt of the deceased member in her last illness, and was asked to state what that illness was. This question was also objected to on the same ground and excluded and exception taken in behalf of the defendant. The defendant's counsel then produced the records of the board of health of Brooklyn, which were identified by the clerk of the department, and offered to prove by the original certificate filed therein by the attending physician the cause of death of the deceased member's two aunts above referred to by the certificate of the respective attending physicians on the occasion of their last illness. The court inquired if the evidence was offered to prove the cause of death, and the defendant's counsel replied that it was. The court thereupon excluded the record and the defendant's counsel excepted. Thus it will be seen that the question involved in this exception was the right of the defendant's counsel to prove by the certificate of the physician in attendance during the last illness of the deceased's aunts the cause of death or the particular disease from which they died. It was admitted that the physician had no knowledge on that subject except such as he acquired in his professional capacity and when the relation of physician and patient existed. That testimony of this character is

expressly prohibited by section 834 of the Code cannot be denied. That the proof offered and excluded was inadmissible, I may assume to be a proposition too clear for argument unless the prohibition contained in the section of the Code referred to has been repealed. This court has held that the statements of the attending physician, for the purpose of establishing the cause of death either of the insured himself or of his ancestors or their descendants, although not parties to nor beneficiaries under the contract, were not admissible. They are excluded not only for the purpose of protecting parties from the disclosure of information imparted in the confidence that must necessarily exist between physician and patient, but on grounds of public policy as well. The disclosure by a physician, whether voluntary or involuntary, of the secrets acquired by him while attending upon a patient in his professional capacity, naturally shocks our sense of decency and propriety, and this is one reason why the law forbids it. The form in which the statements are sought to be introduced is of no consequence, whether as a witness on the stand or through the medium of an affidavit or certificate. All are equally under the ban of the statute. (*Grattan* v. *Met. Life Ins. Co.*, 80 N. Y. 281; *Renihan* v. *Dennin*, 103 N. Y. 573; *Redmond* v. *Ind. Benefit Assn.*, 150 N. Y. 167–172; *Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56; *Nelson* v. *Village of Oneida*, 156 N. Y. 219; *Buffalo Loan, T. & S. D. Co.* v. *Knights Templar & M. M. A. Assn.*, 126 N. Y. 450.) In the case first cited the defendant sought to prove by the attending physician the nature of the illness of which the mother of the insured died, and in the last case the defendant sought to prove the cause of death by the certificate of the attending physician. In both cases it was held that the proof was properly excluded, and in the latter case Judge ANDREWS, speaking for a unanimous court, said : " The disclosure by a physician of information acquired in his professional capacity in attending a patient, where not made in the course of his professional duty, is a plain violation of professional propriety. ⁎ ⁎ ⁎ The statute should have a

broad and liberal construction to carry out its policy. By reasonable construction it excludes a physician from giving testimony in a judicial proceeding in any form, whether by affidavit or oral examination, involving a disclosure of confidential information acquired in attending a patient, unless the seal of secrecy is removed by the patient himself. The verified certificate of the physician which accompanied the proofs of loss was not competent original evidence of the cause of death of the insured, nor was it offered as testimony of the physician as to that fact." If it be said that the statute hereinafter referred to was not then in force, it must be borne in mind that section 933 of the Code of Civil Procedure was, and that section is as broad as the statute which will be presently considered, if not even more comprehensive.

But the contention of the learned counsel for the defendant is, as of course it must be, that the prohibition contained in section 834 of the Code, as construed by these adjudications, has been repealed, not by any amendment to the Code, or by any general law, but by an obscure provision of the charter of the city of New York. (Laws of 1897, chap. 378, § 1172.) The five preceding sections in the charter provide for the organization of the health department of the city and prescribe its powers and duties; enacts a sanitary code for the promotion and protection of health within the city, and embraces matters of a purely local character, and then the section cited concludes in these words: "The publication of additional provisions in, and of, additional ordinances of the sanitary code once a week for two successive weeks in the City Record shall be sufficient, and render any further publication of the same in any other newspaper unnecessary. Any violation of said code or its amendments shall be treated and punished as a misdemeanor, and the offender shall also be liable to pay a penalty of fifty dollars, to be recovered in a civil action in the name of the department of health of the city of New York, before any justice or tribunal in said city, having jurisdiction of civil actions; and all such justices and tribunals shall take juris-

diction of such action.   Copies of the record of the proceedings of said board, of its rules, regulations, ordinances, by-laws and books and papers constituting part of its archives, and the sanitary code, now or hereafter in force in said city, and the ordinances of the sanitary code added thereto and adopted by said board of health, when authenticated by its secretary, or secretary *pro tempore*, shall be presumptive evidence, and the authentication taken as presumptively correct in any court of justice, or judicial proceeding, when they may be relevant to the point or matter in controversy, of the facts, statements, and recitals, therein contained."   It will be seen that the proof offered was scarcely within the words of this statute.   It was not a record of the *proceedings* of the board. It was not a rule, regulation, ordinance or by-law of the board, or anything contained in the sanitary code.   Possibly, it may have been a book, and it, doubtless, was a " paper constituting a part of its archives."   It is by the use of this latter vague expression, found among numerous provisions in a local and special law, enacted solely for the government of a city, that a general rule of evidence, which is part of the Code of Civil Procedure and which has been in force in some form for more than half a century, has been repealed, if at all.   This is really what the contention of the learned counsel for the defendant amounts to, and unless it can be successfully maintained, it is clear that the evidence offered was properly excluded. It should be noted also that it was not offered to prove the fact of death, since there was no issue on that question, but solely to prove the *cause of death*, and that too not in any local matter over which the health department had jurisdiction, but in a controversy concerning the enforcement of a contract obligation between private parties in a court of general jurisdiction.   This local statute, when reasonably and properly construed and understood, and limited to the purpose for which it was enacted, does not, in my opinion, abolish any part of the Code or affect any general rule of evidence applicable throughout the state at the time of its enactment.   This would seem to be very plain when we recall the well-settled rules for the

construction of statutes in cases where it is claimed that a subsequent enactment operates to repeal or modify a prior one. These rules have all the more force in a case like this, where the contention is that a subsequent law, which is local and special, operates to repeal a prior law of general application.

It is not claimed that there is any express repeal of the prohibition contained in the Code against the testimony of a physician based upon information acquired in his professional capacity. If that section of the Code is repealed or affected at all, it is by implication, a view which is not favored. All new laws are supposed to be enacted with knowledge on the part of the lawmakers of the existence and scope of the old laws, and, hence, it is reasonable to conclude that there was no intention in enacting the new law to repeal or change the old law, unless express words to that effect are used, or unless the new law, after every reasonable construction, is in terms so repugnant to the old that both cannot operate or be given any effect, or where the last enactment manifestly covers the whole subject, in which case the prior law must be deemed to be repealed or so modified by the subsequent enactment as to give room for the operation of both and to assign an appropriate office to each, or unless the repugnancy between the two enactments is not only irreconcilable, but also clear and convincing, and following necessarily from the language used. There is no implication of a repeal of the prior law, unless the later act embraces the subject-matter of the earlier, or unless the reason for the earlier act is beyond peradventure removed. Therefore, every effort must be used to make all acts stand, and if by any reasonable construction they can be reconciled, the later act will not operate as a repeal of the earlier. It is frequently found that the conflict between two statutes is apparent only as their objects are different, and when the language of each is restricted to its own object they run in parallel lines without meeting; or the later act can be construed as a modification of or exception to the earlier one, thus avoiding all conflict between the two. The leaning of the courts is so strong against repealing the positive provisions of a

former statute by construction as almost to establish the doctrine of no repeal by implication. Where there is a difference in the whole purview of two statutes, apparently relating to the same subject, the former remains in force. (Dwarris on Statutes, 154.) It is always necessary to the implication of a repeal that the objects of the two statutes are the same in the absence of any repealing clause. If they are not both statutes will stand, though they may refer to the same subject. (*United States* v. *Claflin*, 97 U. S. 546.) Where there is a difference in the whole purview of two statutes, apparently relating to the same subject, the former is not repealed. (*Bowen* v. *Lease*, 5 Hill, 221.) The general policy of the law is adverse to repeals by implication, and special rules of interpretation require the provisions of different statutes to be so construed as to harmonize and avoid conflict, unless the plain meaning of the language is thereby violated. (*People ex rel. Super. of Poor* v. *Board of Supervisors*, 103 N. Y. 541.) The real intention will always prevail over the literal sense of the terms. The context, the occasion and the object of the law are to be considered, and a statute will not be held repealed by implication if a reasonable construction will enable it to stand consistently with the alleged repealing statute. (*Matter of the Evergreens*, 47 N. Y. 216.)

The section of the charter referred to does not conflict with any of the provisions of the Code, and is not so repugnant to the prohibition contained in section 834 as to work its repeal. The rule of evidence prescribed by the Code can stand in all its vigor, and the charter can be given complete effect and perform every office for which it was intended by the lawmakers. The section of the Code was intended for a general rule of evidence applicable to the whole state, while the section of the charter was intended for local and specific purposes. It is given complete effect when limited to cases in which the health department is seeking by actions or legal proceedings to enforce the ordinances, rules and regulations of the department of health or the health laws as enacted in the sanitary code, and to suits for the collection of the penal-

ties prescribed, or in cases where proof of the proceedings of the board is material. Like all the rest of the charter it is local in its operation and limited to the boundaries of the city. It is a law for the city and the health department, and not for the state. The collection and tabulation of vital statistics is one of the functions which the state has delegated to the health department in the locality, but there was no intention to abolish a general rule of law relating to evidence generally, and to substitute a new one in its place as the learned counsel for the defendant contends. It may well be that the records are competent to prove the fact of death, or prove marriages or births. It is quite possible that in some cases they might be competent on questions relating to pedigree. These facts could always, at common law, be established by a species of hearsay evidence, but the *cause of death* in a litigation between private parties, concerning the obligations of a contract of life insurance, must be established, when material, by common-law proof, and that is precisely what this court has held.

In the case of *Buffalo Loan, Trust, etc., Co.* v. *Knights, etc.* (*supra*), it was held that the records of the board of health of Buffalo and the certificate of the attending physician filed by the board, stating the cause of death of the insured, were properly excluded, although it seems that a local statute made it the duty of that board to supervise the registration of deaths and causes of death in the city and provided that no burial of a deceased person should take place until a certificate should have been made and presented of the death and its cause, if known, and the refusal on the part of any person, whose duty it was to make out and file for registration any such record, should be a misdemeanor. The ordinance also made it the duty of the attending physician to furnish a certificate, setting forth the cause of death and place of death of any person in the city and file the same in the office of the board of health. Judge ANDREWS, speaking for this court and sustaining the ruling of the court below in excluding the record of the board of health, said: "The statute and ordinance were police regulations, and the records were required for local and specific

purposes, and are not public records in such sense as makes them evidence between private parties of the facts recorded. We have found no case which would justify their admission in a controversy between private parties as evidence of the cause of death recently happening, where that became a material inquiry."

The discussion might very well end here, but since the learned counsel for the defendant has found some support for his contention in a case decided by the Supreme Court (*Keefe v. Supreme Council*, 37 App. Div. 276), and as there is apparently a decided difference of opinion among ourselves, it may be useful to point out the consequences which must follow the construction of the section of the charter for which the learned counsel contends. In determining the validity or construction of statutes, we must consider not only what has been but what may be done under them. It is important to note the process through which the health department collects the information from which the record excluded in this case is made up. That is described in section 1238 of the charter. It is there made the duty of the next of kin of any deceased person, and of each person present with the deceased at the death, and of the persons living in the house where the death occurred and the attending physician, if any, to report in writing to the health department a great variety of facts concerning the deceased, among other things the "cause of death" within five days after death occurred. The next of kin and the persons present at the death or being in the house may be, and frequently are, very numerous. It is the duty of all to report, and many may, of course, comply with the law, but they are under no legal obligation to make a correct report of the facts. One may state that the person died of consumption, another that the death resulted from heart failure, and still another that the death was caused by fever, and so statements may conflict with each other, and yet they are all "presumptive proof of the facts stated therein," if the contention of the defendant's counsel is to be accepted. Some or all of the reports may show that death was produced by

shooting, stabbing or poisoning, the act of a third person, and they must be accepted as presumptive proof of the facts stated in a criminal prosecution, since all presumptive proof is just as applicable in a criminal as in a civil case. The next of kin, or some of them, may report that the person died of paresis, and that statement is presumptive proof of the fact stated on an issue touching the competency of the deceased to make a will. But there is, or may be, another difficulty. No one can very well claim that it is competent for the legislature to inject a code of evidence into a local law like a city charter without at least some indication in the title of such a purpose, and no hint of that kind is contained in the title of the act in question. Moreover, the contract in this case was made more than two years before the charter was enacted and went into effect. All contracts are supposed to be made with reference to existing laws, and subsequent legislation which effects unreasonable changes in the rules of evidence for the enforcement of the contract, or which repeals laws upon which its validity or enforcement depends, impairs the obligation of the contract within the restrictions of the Constitution. (*McGahey* v. *Virginia*, 135 U. S. 662; *People ex rel. Reynolds* v. *Common Council*, 140 N. Y. 300.) It is not necessary to assert here that the section of the charter referred to, even as interpreted by the learned counsel for the defendant, enacts an unreasonable rule of evidence, or that it repeals an old one upon which the enforcement of the contract depends. It is enough, in order to point out the danger of literal construction, to show that if the change does not actually violate constitutional restrictions it comes so perilously close to it that the construction contended for in behalf of the defendant should be avoided. The only answer urged to all this is *ita lex scripta est.* With all respect, I am constrained to say that this is no argument at all. It is an important function of all courts to give construction to statutes, to reconcile them when there is an apparent conflict, to interpret them in such a way that they will operate reasonably, and so as not to produce absurd results or to cor

conflict with constitutional restrictions. When that duty is performed in this case it will be found that the learned trial judge ruled correctly in excluding the evidence which is the subject of this discussion.

The judgment is right and should be affirmed, with costs.

PARKER, Ch. J., HAIGHT and WERNER, JJ., concur; GRAY and LANDON, JJ., dissent; CULLEN, J., not sitting.

Judgment affirmed.