In the Matter of the INVESTIGATION INTO ALLEGED COMMISSION OF CRIMINAL ABORTIONS IN THE COUNTY OF KINGS.

GRAND JURY OF KINGS COUNTY FOR THE ADDITIONAL DECEMBER 1953 TERM, et al., Appellants; ISRAEL MAGELANER, as Superintendent of Kings County Hospital, Respondent.

Second Department, June 30, 1955.

*Edward S. Silver, District Attorney (Aaron Nussbaum* of counsel), for appellants.

*Peter Campbell Brown, Corporation Counsel (Victor J. Herwitz* and *Seymour B. Quel* of counsel), for respondent.

·BELDOCK, J. The question for determination on this appeal is whether, with respect to abortions, section 90 of the Sanitary Code of The City of New York has effected a repeal or suspension, within the city, of the State statute which prohibits a doctor from disclosing " any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity " (Civ. Prac. Act, § 352; this prohibition being hereafter referred to as the " statutory prohibition ").

Said section 90, so far as relevant, reads as follows. " It shall be the duty of the * * * superintendent * * * of any hospital * * * in The City of New York and of every physician in said city to immediately notify the Department of Health by telephone of any case of abortion or miscarriage where criminal practice is discovered or suspected."

Within the city of New York, in which it is applicable, section 90 has all the force and effect of State law (*Matter of Bakers*

*Mut. Ins. Co. [Dept. of Health]*, 301 N. Y. 21, 27).

A violation of section 90 subjects the offender to punishment for a misdemeanor in a criminal action and to prescribed penalties in a civil action (Sanitary Code of City of New York, § 224; Administrative Code of City of New York, § 564–6.0; Penal Law, § 1740).

In order to understand the legal significance of the loose term " criminal practice " as applied to abortions and as used in section 90, several brief definitions are desirable: Abortions are classified as spontaneous and induced. A spontaneous abortion of pregnancy is one that is caused by some normal or abnormal act of nature, without the intervention of any outside agency. An induced abortion is one that is caused artificially either by the patient herself or by another. When an abortion is thus artificially induced in order to save life, it is known as a therapeutic abortion.

The only type of abortion which is made a " criminal practice " and unlawful is the abortion which is induced for reasons other than therapeutic (Penal Law, §§ 80, 81, 82, 1142). All other abortions are deemed to be innocent and lawful.

Based on information and belief that section 90 is being flagrantly violated, in that the doctors have been reporting only a small percentage of the cases in which the abortion or miscarriage has been induced by "criminal practice," the District Attorney of Kings County commenced a Grand Jury investigation for the purpose of discovering and punishing criminally: (a) the violators of section 90, (b) the violators of the statutes prohibiting abortions other than spontaneous or therapeutic (Penal Law, §§ 80, 81), and (c) the violators of the statutes prohibiting the manufacture, sale or gift of any medicine, instrument or substance for the purpose of producing the unlawful abortion or miscarriage (Penal Law, §§ 82, 1142).

In aid of such Grand Jury investigation the District Attorney caused to be served upon respondent, the superintendent of the Kings County Hospital, a subpœna requiring him to produce before the Grand Jury " All papers, folders, charts and hospital records, of any and all persons treated at the Kings County Hospital for ' Abortion or Miscarriage ' (other than therapeutic) ", during specified periods of time.

On advice of the corporation counsel of the City of New York, the respondent appeared before the Grand Jury and refused to honor the subpœna on the ground that the statutory prohibition forbade the disclosure of such records.

Thereupon the District Attorney, on behalf of the Grand Jury, moved before the County Court, Kings County, to punish respondent for his contempt in failing to obey the subpœna. From the order denying such motion the Grand Jury and the District Attorney appeal.

At the outset it should be noted that while the statutory prohibition is contained in the Civil Practice Act (§ 352), the "rules of evidence in civil cases are applicable also to criminal cases" (Code Crim. Pro., § 392; *People* v. *Murphy*, 101 N. Y. 126).

It should also be noted that the Grand Jury "can receive none but legal evidence" (Code Crim. Pro., § 256) and that its indictment would be invalid if it were based solely on evidence that is barred by the statutory prohibition (*People* v. *Sellick*, 4 N. Y. Crim. Rep. 329; *People* v. *Sexton*, 187 N. Y. 495, 511).

It clearly appears and, indeed, it is not disputed that the hospital records subpœnaed would necessarily disclose information acquired by the hospital doctors during the course and in aid of their professional treatment of the patients, information, the import of which in each case was necessary to the doctor so "that he might * * * practice his art" to the advantage of the patient. It is precisely such information which is privileged and which the statutory prohibition protects from disclosure, regardless of the medium through which it is sought to be obtained (cf. *Grattan* v. *Metropolitan Life Ins. Co.*, 80 N. Y. 281, 298; *Davis* v. *Supreme Lodge, Knights of Honor*, 165 N. Y. 159, 163; *Matter of Myer*, 184 N. Y. 54, 58; *Steinberg* v. *New York Life Ins. Co.*, 263 N. Y. 45, 48–49; *Matter of New York City Council* v. *Goldwater*, 284 N. Y. 296, 302; *Matter of Warrington* [*State of New York*], 303 N. Y. 129, 135; *Matter of Coddington*, 307 N. Y. 181, 187).

The statutory prohibitions governing the relation of doctor and patient or attorney and client "express a long-standing public policy to encourage uninhibited communication between persons standing in a relation of confidence and trust," and in the courts' effectuation of such policy "the statutes are accorded a broad and liberal construction" and the privileged communications "are zealously guarded" (*People* v. *Shapiro*, 308 N. Y. 453, 458; see, also, *Steinberg* v. *New York Life Ins. Co.*, *supra*).

However, despite the sacrosanct nature of the statutory prohibition, the Legislature having created it may direct or authorize its waiver or suspension, in whole or in part, under circumstances and conditions prescribed by it, and, from time to time,

it has elected so to do (cf. Civ. Prac. Act, § 354; L. 1905, ch. 331, amending Code of Civ. Pro., § 834, now Civ. Prac. Act, § 352; *People* v. *Brecht,* 120 App. Div. 769, 773–774, affd. 192 N. Y. 581; Penal Law, § 1915, and *People* v. *Lay,* 254 App. Div. 372, affd. 279 N. Y. 737). It will be noted that, in contrast to the statutory prohibition which is liberally construed in favor of the prohibition, the waiver or suspension statute has been strictly construed and confined to the specific exception created by it (cf. *Matter of Coddington,* 307 N. Y. 181, *supra,* and *Thomas* v. *Morris,* 286 N. Y. 266).

Since the number of therapeutic abortions is concededly inconsequential, the practical effect of the subpœna here is to require respondent to produce the hospital records of all patients who came to the hospital for treatment, suffering from an abortion or miscarriage — spontaneous or induced, innocent or criminal.

The District Attorney contends that the Grand Jury is entitled to examine all such records in order to determine whether the doctors and the respondent have properly discharged their duty to report all the cases of induced abortions (other than therapeutic), as required by section 90 of the Sanitary Code.

In other words, while said section directs only a partial disclosure, that is, a disclosure with respect to one class of abortions only, nevertheless, in order to determine whether there actually has been such a partial disclosure, the District Attorney now insists upon the Grand Jury's examination of all the hospital records in practically all the abortion cases.

The issue on this appeal thus resolves into a question of whether the special statute, in the form of section 90 of the Sanitary Code, operates to annul the general statutory prohibition so as to permit the use of all the hospital records in all abortion cases. In my opinion it does not.

Section 90 was not intended to be utilized for the purpose of obtaining an examination *en masse* of all the hospital records pertaining to all cases of abortion or miscarriage. The section relates only to the cases currently being treated by doctors in which a criminal abortion practice is discovered or suspected. Hence, the section at most would effect a suspension of the statutory prohibition only as to the facts which normally would be reported by telephone in compliance with it, namely: (a) the identity of the patient who subjected herself to the criminal abortion practice, and (b) the doctor's findings in support of his discovery or suspicions.

Such a *pro tanto* suspension clearly leaves untouched and unaffected the statutory prohibition as to all other privileged

facts with respect to the *reported* cases, and as to *all* the privileged facts with respect to *all the unreported* cases.

It would be incongruous to say the least, in order to determine whether partial disclosure has been accurately made as directed by section 90, to compel complete disclosure, and thus, by indirection, to lift completely the veil of secrecy imposed by the statutory prohibition and to divulge without restriction every confidential communication or fact learned by the doctor with respect to practically every aborted patient. The net result of such a plenary disclosure would be: (a) to permit a well-defined exception to the general rule to vitiate the general rule itself, and (b) to permit a repeal of a general statute by implication or statutory construction.

It is well settled '' that a repeal by implication is not favored, * * * that it will be upheld only where the repugnancy is plain and unavoidable '', and that the courts will strain to avoid it (cf. *Matter of Coddington*, 307 N. Y. 181, *supra; Davis* v. *Supreme Lodge, Knights of Honor*, 165 N. Y. 159, 164–166, *supra; People* v. *Dwyer*, 215 N. Y. 46, 51; *Peterson* v. *Martino*, 210 N. Y. 412, 418, and *Grimmer* v. *Tenement House Dept.*, 204 N. Y. 370, 378).

In effect, through the medium of said section 90, the Grand Jury is attempting to reach proscribed information in an indirect and circuitous manner. Should the respondent divulge all the hospital records in all abortion cases for the purpose of enabling the Grand Jury to make its own determination as to whether all the induced or criminal abortions have been accurately reported, the statutory prohibition will have been vitiated *in toto*. The result will be that under the guise of determining whether the partial disclosure has been made as required by section 90, the Grand Jury as well as the District Attorney will be enabled to obtain a plenary and *carte blanche* examination of all the hospital records in practically all the abortion cases — including those in which no disclosure is required by said section.

Such an indirect and implied destruction of the statutory prohibition in relation to all cases of abortion will not be sanctioned by the courts (cf. *Matter of Coddington, supra; Davis* v. *Supreme Lodge, Knights of Honor, supra*, p. 163, and *Grattan* v. *Metropolitan Life Ins. Co.*, 80 N. Y. 281, 299–300, *supra*), particularly since the prohibition is to be '' zealously guarded '' and the statute creating it is to be '' accorded a broad and liberal construction '' (*People* v. *Shapiro*, 308 N. Y. 453, 458, *supra;* cf. *Matter of New York City Council* v. *Goldwater*, 284 N. Y. 296, 300, *supra*).

If the Legislature had intended to make such a drastic modification of the statutory prohibition as to make available the hospital records in all abortion cases, it would have expressed that intention in clear and unmistakable language and would not have left it to be spelled out by the tenuous or tortuous reasoning inherent in the process of interpretation of ambiguous statutes.

Accordingly, the respondent properly refused to honor the subpœna directing him to produce before the Grand Jury all the records of the Kings County Hospital relating to substantially all the persons treated at the hospital, during specified periods of time, for abortion or miscarriage, and the order denying the motion to adjudge respondent to be guilty of a criminal contempt of court by reason of such refusal should be affirmed.

NOLAN, P. J., WENZEL, SCHMIDT and MURPHY, JJ., concur.

Order of the County Court, Kings County, denying a motion to adjudge respondent to be guilty of a criminal contempt of court, affirmed.