Nathan R. Sobel, J.
The charge is manslaughter. The defense is that the blows struck neither caused death nor were a competent producing cause of death. In short, the defendant contends that the victim died of natural causes in a hospital after his admission thereto following the alleged assault. I am satisfied that such an issue exists in this case. Without such a preliminary determination, defendant would not be entitled to the relief sought.
The defendant has retained as an expert a pathologist. He contends that the pathologist cannot furnish him with expert assistance nor can his counsel prepare for cross-examination on the main issue without certain records.
The defendant therefore requests permission, preliminary to the trial, to inspect:
1. The hospital records concerning treatment of the deceased before his death.
2. Certain portions of the medical examiner’s report with respect to his findings and conclusions as to the cause of death.
The novel feature of this case is that the District Attorney, not the patient or the patient’s representative, raises the question of the privileged nature of the hospital records under section 352 of the Civil Practice Act. And, with respect to the autopsy report, the District Attorney contends that it is not available to the defendant by virtue of section 879 of the New York City Charter.
Further, the District Attorney raises these issues not on the trial but on a motion for pretrial inspection of these records. I examine this last issue first.
I.

Pretrial Discovery and Inspection in Criminal Cases.

The law of this State with respect to pretrial inspection begins, and insofar as it is pertinent to the issue before me ends, with People ex rel. Lemon v. Supreme Ct. (245 N. Y. 24 [1927]). The defendant was accused of murdering her husband by poisoning his food. The defendant was granted an inspection of the Grand Jury minutes. She thus obtained all the medical testimony concerning the cause of death. The *804 defendant was not satisfied with this disclosure. She also sought written documents not submitted to the Grand Jury. Included were a confession by her accomplice; complete memoranda of the post mortem examination, and all other reports of chemical analysis of the organs of the deceased. All of these additional requests were granted. The District Attorney petitioned for an order of prohibition.
Judge Cabdozo traced the history of pretrial inspection in civil cases— (Civ. Prac. Act, § 324). He then stated: “ When we turn to criminal causes, we find a jurisdiction that is even more restricted. There are expressions of opinion that deny the jurisdiction altogether. There are others that seem to limit the disclosure to documents that are the subject of the charge, thus assimilating the practice to the jurisdiction in civil causes that was known at common law. Others concede or assume a broader jurisdiction, one adequate to prevent a failure of justice, yet narrower than discovery in equity or under the statutory substitute. Nowhere has there been a suggestion that the jurisdiction can properly be extended to notes or memoranda in the possession of the prosecutor, but inadmissible as evidence either for prosecution or for defense ” (p. 29).
Judge Cabdozo then discussed the cases in this and other jurisdictions. He added:
“ The decision of this case does not require us to affirm or deny the existence of an inherent power in courts of criminal jurisdiction to compel the discovery of documents in furtherance of justice. The beginnings or at least the glimmerings of such a doctrine are to be found, as we have seen, in courts other than our own. * * * We have a statute to the effect that the rules of evidence shall be the same in criminal as in civil causes (Code Grim. Pro., § 392). * * * The time has arrived, so it is argued, when they should be taken over by the criminal courts, and applied to criminal actions by a process of analogy. The appropriation is justified, we are told, by the germinal developments of a like power in the courts of other States, by the public policy implicit in the rule of uniformity of evidence, and by the necessities of justice. “We leave the question open, for if the power exists at all, this case is not within it ” (pp. 32-33).
Judge Cabdozo then concludes that the memoranda sought would not be admissible in evidence. “In a word, statements and memoranda collected by the prosecutor are to be exhibited to the defendant, though none of them will be admissible either for her or against her if offered at the trial. She makes no claim that they will be. She takes the ground that she should *805 have them because study of the evidence will be helpful in preparing her defense. This is to enlarge the remedy beyond anything permitted by analogy or precedent” (p. 34).
The decision in Lemon (supra) was written 30 years ago. , All of the memoranda or writings there involved were inadmissible. These were pure hearsay. They were inadmissible under the old “ shop book rule ” or the “ regular entries rule ”. But in 1928 section 374-a of the Civil Practice Act was enacted primarily to overcome some of the deficiencies of the old rule. (Johnson v. Lutz, 253 N. Y. 124; Palmer v. Hoffman, 318 U. S. 109, 115.)
It has been held applicable and liberally applied to criminal cases. Hospital records are admissible in evidence. (People v. Kohlmeyer, 284 N. Y. 366.) Similarly, the medical examiner’s report may and frequently is received in evidence. Thus even under the strict rule of Lemon (supra), defendant is entitled to pretrial inspection of these records.
But much has transpired since Judge Cabdozo foresaw the “beginnings” and “glimmerings” of the doctrine that criminal courts have an inherent power in furtherance of justice to compel discovery of documents.
The Federal courts now permit in broadest terms a right of pretrial discovery and inspection. (Federal Buies of Grim. Pro., rules 16, 17, subd. [c].) Many States, including New Jersey, have adopted similar rules. (N. J. Bules, rule 2: 5-8 [c] ; State v. Cicenia, 6 N. J. 296; State v. Tune, 17 N. J. 100.) How far other States have gone is evident from an examination of some recent decisions. Discovery and inspection is extended not only to hospital and autopsy reports, but to confessions of the defendant and to statements of other witnesses. (State ex rel. Mahoney v. Superior Ct., 78 Ariz. 74; Jones v. State, 213 Ark. 863; State v. Simpson, 216 La. 212; State v. Leming, 217 La. 257; Vann v. State, 85 So. 2d 133 [Fla.].) Pretrial inspection of an autopsy report was permitted in a recent California ease. (Walker v. Superior Ct., 155 Cal. App. 2d 134.)
Some States reject the rule that pretrial discovery and inspection may extend to the defendant’s admissions or confessions or to witnesses’ statements. This is on the theory, that efforts may be made to pattern a defense or to suborn the witnesses. But very few States now refuse discovery or inspection of physical evidence, public documents or written reports of autopsies, chemical analyses or blood tests. These cannot be altered. There is no purpose served in denying the defendant access to these records unless indeed the People have so great an interest in convicting accused parties as to justify interposing every and any obstacle to the disclosure of facts.
*806 There is a practical aspéct to this problem which is certainly worthy of consideration. In the disposition of thousands of cases in this court, I have never known the District Attorney to refuse to open his files to defendant’s counsel long before trial for the purpose of effecting a satisfactory disposition. If a defendant’s admissions and confessions, witnesses statements and documentary records are so frequently voluntarily disclosed what objection in reason can there be to a disclosure by order of a court. In the trial of many hundreds of cases, I have never known one when the People have been or could have been prejudiced by the disclosure of documents or records. On the other hand I have known many where earlier disclosure would have accelerated the trial and a few where such disclosure would have prevented a failure of justice. (People v. Gezzo, 307 N. Y. 385; People v. Lowe, 285 App. Div. 207.) The desire that the State’s evidence remain undisclosed until trial partakes of the nature of a game rather than judicial procedure. The State ought to be too jealous of according a defendant a fair and impartial trial to hinder him in intelligently preparing his defense. The dogma that the People’s case must at all cost remain secret has been oversold, and contra, its potential for good, underestimated.
Another reason often exists for allowing a defendant pretrial discovery and inspection. Judge Cardozo in Lemon (supra) speaks of a discovery and inspection “ adequate to prevent a failure of justice ” (p. 29). The Lemon case was decided before the decisions of the United States Supreme Court defining procedural due process. (Mooney v. Holohan, 294 U. S. 103; Pyle v. Kansas, 317 U. S. 213; Alcorta v. Texas, 355 U. S. 28.) Any action or omission by the District Attorney which prevents a defendant from presenting evidence which may establish his innocence may now result in a denial of due process of law under the Fourteenth Amendment. And Lemon was decided before the writ of coram nobis was generally recognized in this State and before the case holdings that due process under the State Constitution is denied a defendant when a District Attorney withholds material testimony which could cause a different verdict. (See Frank on Coram Nobis, § 3.01 [c], and cases there cited.)
I need not decide whether a defendant should be entitled to pretrial inspection of his own and other witnesses’ statements. That issue is not before me. But, I must state, that I see no practical reason why we should continue to cling to old shibboleths and rituals for which I have in my experience observed no adequate justification.
*807 I do decide that physical objects, documents, hospital reports, chemical analyses, blood tests and related reports may be made available to a defendant in the discretion of the court before trial. It need only appear that such ‘ evidence ” is relevant, competent and outside any exclusionary rule. I now proceed to examine whether the hospital report and the autopsy report in issue may be excluded under any evidentiary rule. I do so with the implicit reservation that if withholding such documents even under an exclusionary rule of evidence may result in deprivation of procedural due process, inspection must nevertheless be granted. Due process may not be made contingent on anything so slender as a procedural rule.
II.
Hospital Records — Admissibility under Section 352 of the Civil Practice Act.
Section 374-a of the Civil Practice Act, discussed, supra, was enacted to overcome the hearsay objection. It does not overcome any other exclusionary rule which might properly be invoked. Thus a hospital record will nevertheless be excluded if it, the record or the physicians or nurses entries thereon, discloses “ any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.” (Civ. Prac. Act., § 352, formerly Code Civ. Pro., § 834; Rev. Stat. of N. Y., part III, ch. VII, tit. Ill, § 73.)
It should be noted that the term “ confidential communications ” usually pertains only to narrations when used in the attorney-client, husband-wife and priest-penitent privileges. The physician-patient statute is much broader. It includes both the narration and physical observations, examination, symptoms and treatment. (Renihan v. Deninn, 103 N. Y. 573; 8 Wigmore on Evidence, § 2384.) Thus under certain circumstances the history of the injury is privileged, but only provided such history is necessary for treatment. (Benjamin v. Village of Tupper Lake, 110 App. Div. 426; Green v. Metropolitan St. Ry. Co., 171 N. Y. 201; cf. Munson v. Model Taxi Corp., 273 App. Div. 1039.) Please note, however, that section 354 of the Civil Practice Act, as amended in 1955, refers to waiver of “ confidential communications ”. This term is deliberately used in the waiver section since it refers to communications which would tend to disgrace the memory of a deceased patient.
The history of the statute (Civ. Prac. Act, § 352) requires mere mention. Physician-patient privilege did not exist at common *808 law. New York State, in 1828, was the first State to adopt a statute recognizing the privilege. Since that time half the States have adopted similar statutes. (Maine v. Maryland Cas. Co., 172 Wis. 350.) The purpose and policy of the statute are discussed in Edington v. Mutual Life Ins. Co. (67 N. Y. 185,194). And for a criticism of the privilege see dissent of Owbet, J., in Maine v. Maryland Cas. Co. (supra); and the 1938 Report of the American Bar Association Committee on Improvements in the Law of Evidence.
The application of the privilege in civil cases is fairly well understood. It has been the subject of many appellate decisions in our courts. It is rarely invoked except in three classes of issues: (1) Mental capacity of a testator; (2) nature of insured person’s health, and (3) nature of personal injuries.
The application of the privilege in criminal cases is not too clear, as will appear from a discussion of the cases, later in this opinion. It is pertinent to note at this point that some of the statutes of the other States make the privilege expressly inapplicable to criminal cases and in some States this result is reached by construction of their statutes or by decisional law. (Commonwealth v. Sykes, 353 Pa. 392; State v. Bounds, 74 Idaho 136, and cases cited.)
It is only necessary in this opinion to mention a few principles applicable to both civil and criminal eases.
(1) The privilege is applicable to preliminary proceedings as well as the trial. (Woernley v. Electromatic Typewriters, 271 N. Y. 228.) It is applicable to examination before trial. (Rubin v. Equitable Life Assur. Soc., 269 App. Div. 677.) It is applicable to motions for inspection and discovery. (Matter of Warrington, 303 N. Y. 129.) It is applicable to legislative investigations. (Matter of Council of City of New York v. Goldwater, 284 N. Y. 296.) It is applicable to subpoenas and testimony before the Grand Jury. (Matter of Investigation of Criminal Abortions in County of Kings, 286 App. Div. 270; People v. Eckert, 2 N Y 2d 126.)
(2) The privilege is applicable to hospital records even though the physician is not called. (Matter of Council of City of New York v. Goldwater, supra; Vanderhule v. Berinstein, 285 App. Div. 290; Matter of Investigation of Criminal Abortions in County of Kings, supra.)
(3) The privilege survives the death of the patient. (Civ. Prac. Act, § 354; Matter of Coddington, 307 N. Y. 181.) A death certificate offered to establish the fact of death is not privileged. But if offered to show the cause of death, it is *809 privileged. (Davis v. Supreme Lodge, 165 N. Y. 159; Rudolph v. John Hancock Mut. Life Ins. Co., 251 N. Y. 208.) For the special rule in New York City see section 33 of the Sanitary Code (Matter of Bakers Mut. Ins. Co. [Dept. of Health], 301 N. Y. 21.) But an autopsy performed on a corpse is not privileged. No relationship of physician and patient is deemed to exist. (Felska v. John Hancock Mut. Life Ins. Co., 144 Misc. 508, and cases cited; see, also, note 58 A. L. R. 1134 to Travelers’ Ins. Co. v. Bergerson, 25 F. 2d 680.)
(4) The privilege may be waived. (Civ. Prac. Act, § 354) makes provision for express waiver by the patient, if living; by his personal representative or other party in privity with patient having an interest in patient’s estate, if dead. Most often in personal injury claims and in criminal cases the waiver is implied. The patient may waive the privilege by his conduct. He may do so by testifying in detail as to his injury or illness. (Hethier v. Johns, 233 N. Y. 370.) He may do so by voluntarily disclosing his physical ailments or condition. (Apter v. Home Life Ins. Co., 266 N. Y. 333; Davis v. Davis, 1 A D 2d 675; People v. Bloom, 193 N. Y. 1.) He may do so by voluntarily calling the physician as a witness. (Steinberg v. New York Life Ins. Co., 263 N. Y. 45.) These are the most common methods of implied waiver. There are others.
(5) Who may claim the privilege? Technically speaking, the privilege belongs to the patient and may be claimed only by him.
We have seen that where the patient is dead, section 354 of the Civil Practice Act permits waiver by his personal representative or other party privy in interest in his estate. A failure to waive in effect is construed as and referred to as a claim of privilege. (Edington v. Mutual Life Ins. Co., 67 N. Y. 185, supra; Davis v. Supreme Lodge, 165 N. Y. 159, supra.)
But as a practical matter, it is the physician or hospital authorities who in the first instance assert the privilege. Although the statute does not prescribe a rule of professional conduct for the government of physicians, it is a plain violation of professional propriety to disclose the information received from his patient. The assertion of the privilege lasts until expressly or impliedly waived by the patient or his representative. This assertion of the privilege is referred to in the decisions as a claim of privilege.
The court has held that where a physician testified before a Grand Jury concerning information received from his patient defendant, the indictment will be dismissed. Thus, even in the absence of an assertion of privilege. The patient was of course *810 in no position to claim the privilege before the Grand Jury. (People v. Eckert, 2 N Y 2d 126, supra.) This is on the theory that the Grand Jury can receive none but legal evidence.
When hospital authorities were called upon by a Grand Jury to produce records of all abortions performed in the hospital, held, that they may assert the privilege and the subpoena will be quashed. (Matter of Investigation of Criminal Abortions in County of Kings, 286 App. Div. 270, supra.) The same result .follows an assertion of the privilege by hospital authorities in a legislative investigation. (Matter of Council of City of New York v. Goldwater, 284 N. Y. 296, supra.)
Please note that in the last-mentioned cases, these were proceedings in which the patients were in no position to claim then-privilege.
* # *
I turn now to the principal issue. I discuss only the rule in civil cases. May one against whom hospital records are offered invoke the privilege.
Of course, if the patient is a party to the proceedings, the opposite party cannot invoke the privilege. The patient party only may claim the privilege or waive it. (McCarthy v. McCarthy, 116 Wash. 360.) A party privy in interest to the patient, such as a beneficiary or assignee of a life insurance policy, may invoke the privilege. (Roth v. Equitable Life Assur. Soc., 186 Misc. 403, affd. 270 App. Div. 923; Davis v. Supreme Lodge, 165 N. Y. 159, supra.)
But suppose the patient is not a party but a complete stranger to the proceeding. I find only one case in point. In Murray v. Physical Culture Hotel Co. (258 App. Div. 334), plaintiff sued for negligence in placing him in the same room with a patient having tuberculosis, from whom he allegedly contracted the disease. Plaintiff sought to introduce hospital records to prove patient had tuberculosis. The defendant hotel claimed the privilege on behalf of the patient. The appellate court approved the opinion of Special Term which held in part: The question of privilege can be raised by a party although the patient is not a party for the reason that it is in the public interest that the confidential nature of the relationship be protected, even though the patient is not before the court. (Bacon v. Frisbie, 80 N. Y. 394, 399, 400.) ”
But that portion of the decision in the Murray case is -dicta since the court admitted the hospital record because plaintiff obtained a waiver from the patient.
It is my opinion that the privilege cannot be claimed by a party where the patient is not a party.

*811
The Privilege in Criminal Cases.

Section 352 of the Civil Practice Act is made applicable to criminal cases by section 392 of the Code of Criminal Procedure. (Matter of Investigation of Criminal Abortions in Kings County, 286 App. Div. 270, supra.)
Of course where the defendant is himself the patient, he may claim the privilege. (People v. Brower, 53 Hun 217; People v. Decina, 2 N Y 2d 133; People v. Eckert, 2 N Y 2d 126, supra.) The defendant may waive the privilege expressly or impliedly. (People v. Runion, 3 N Y 2d 637; People v. Bloom, 193 N. Y. 1, supra.) When the physician is a jail physician or a physician sent by the District Attorney to examine „the defendant for mental illness, the question arises whether or not a professional relationship exists — (People v. Austin, 199 N. Y. 446; People v. Koerner, 154 N. Y. 355; People v. Furlong, 187 N. Y. 198; People v. Hoch, 150 N. Y. 291; People v. Sliney 137 N. Y. 570; People v. Schuyler, 106 N. Y. 298). The foregoing cases are fully discussed in People v. Decina (2 N Y 2d 133, 141, 142, 143., supra). (But cf. Taylor v. United States, 222 F. 2d 398, and Hall v. State, 209 Ark. 180; see, also, Model Penal Code, Draft 4, § 4.09, p. 36.)
The real question arises when the defendant seeks to invoke the privilege of his victim and thus exclude the physicians testimony or hospital records.
The great weight of authority in other jurisdictions which recognize the privilege in criminal cases is that the defendant cannot invoke the privilege of his victim whether the victim is alive or dead. (Cabe v. State, 182 Ark. 49; Thrasher v. State, 92 Neb. 110; Davenport v. State, 143 Miss. 121; State v. Thomas, 1 Wn. 2d 298; Wimberley v. State, 217 Ark. 130; Jasper v. State, 269 P. 2d 375 [Okla.].) Most of the States hold that even where the victim is a co-conspirator, as in abortion or manslaughter by abortion, the defendant cannot invoke the victim’s privilege. (State v. Grimmel, 116 Iowa 596; Hauk v. State, 148 Ind. 238; but see contra State v. Karcher, 155 Ohio St. 253.) The foregoing rule was held applicable even where the patient claimed the privilege on defendant’s behalf. {Vance v. State, 182 Miss. 840.)
The New York rule can best be determined by a consideration of the cases.
Pierson v. People (79 N. Y. 424 [1880]) involved a prosecution for murder by administering poison. The trial court admitted testimony as to the physicians’ observations and treatment of the victim prior to her death over the objection of the defendant. The court said concerning the privilege (p. 433): “It could *812 not have been designed to shut out such evidence as was here received, and thus to protect the murderer rather than shield the memory of his victim.?’
In People v. Murphy (101 N. Y. 126 [1886]), the patient victim was living. The prosecution was for abortion. The physician was sent.by the prosecutor. The defendant objected to the disclosure by the physician of the treatment of and declarations by the patient following the alleged abortion. The court said (p. 129): “Here the patient was living, and the disclosure which tended to convict the prisoner inevitably tended to convict her of a crime, or cast discredit and disgrace upon her.” The court held that the defendant was entitled to invoke the privilege. But it should be noted that the decision turned mainly upon the issue that the physician testified to declarations of the victim, a co-conspirator, after the termination of the conspiracy. Her declarations were excluded on that ground rather than on the ground of physician-patient relationship. But the court seemed to draw a distinction between disclosure where the patient was living and disclosure where the patient was dead.-
That distinction was also drawn in People v. Benham (30 Misc. 466 [1900]). That case involved an application for a new trial following defendant’s conviction for murder by poisoning the deceased. The defendant sought to introduce newly discovered evidence consisting of a letter written to her physician by the victim stating that she had been using drugs. The prosecutor sought to exclude the evidence by invoking the privilege. The court ruled that since this was a murder case, the communication from the patient victim to the physician would be admissible against the defendant. It added that if admissible to prove the crime, it was admissible to disprove the crime. It should he noted that it was the District Attorney who sought in this case to invoke the privilege.
In 1905, evidently relying upon what appears to be dicta in People v. Murphy (101 N. Y. 126, supra), the Legislature amended section 834 of the Code of Civil Procedure (now Civ. Prac. Act, § 352) (L. 1905, ch. 331) to make an exception to disclosures' by the physician “ where the patient is a child under the age of sixteen, the information so acquired indicates that the patient has been the victim or subject of a crime”. The Legislature assumed, following the dicta in Murphy, that the privilege could be invoked in all cases where the patient was living. It therefore sought to make an exception where the patient victim was a child under the age of 16.
People v. Brecht (120 App. Div. 769 [1907], affd. 129 N. Y. 581) was a prosecution for manslaugher in having caused the *813 death of the victim by criminal abortion. The court ruled that the physician could testify to observations and treatment prior to death. The defendant contended that the Legislature by its 1905 amendment indicated an intent to have the privilege apply in all cases other than the exception made. The court ruled that the privilege cannot be invoked by the defendant where he has caused the death of the patient-victim. Once again the court appeared to recognize that a distinction exists between cases where the victim-patient is living and where the victim-patient is dead. In the former, the court held, the defendant may invoke his victim’s privilege; in the latter, he may not.
The latest expression by the court on this issue is People v. Lay (254 App. Div. 372 [1938], affd. 279 N. Y. 737). In that ease the prosecution was for assault. The victim-patient was living. The physician was permitted to testify despite the defendant’s objection. The court said (p. 373): “It could not have been intended by the Legislature that in such a case the act should be the means of protecting a criminal from just punishment. (Pierson v. People, 79 N. Y. 424; People v. Harris, 136 id. 423.) Those cases involved convictions for murder-But the essence of the decision applies here. There was no disclosure by the doctor which would subject the woman to prosecution, damage her reputation, or wound her feelings, as was the case in People v. Murphy (101 N. Y. 126). * * * The statutory prohibition, the birth of which took place in the State of New York, is not accepted in all jurisdictions. (5 Wig-more on Evidence [2d ed.], § 2380.) Its scope should be limited to its purpose.”
Thus the Lay case (supra) abolishes the unrealistic distinction laid down by previous cases making a defendant’s right to invoke his victim’s privilege dependent upon whether the patient is living or dead. It brings the law in this State into conformity with the law in other jurisdictions.
The Lay case (supra), however, appears to leave open the question of the defendant’s right to invoke the privilege when the victim is an accomplice or co-conspirator such as in a prosecution for abortion. If the disclosure by the doctor “ would subject the woman to prosecution, damage her reputation, or wound her feelings ” may the defendant then invoke the privilege of his co-conspirator? I would hold that the defendant may not. A realistic approach would require that the patient and the patient alone may claim the privilege. It is my judgment that the law now is that under no circumstances whatsoever may a defendant invoke his victim’s privilege. The purpose of the *814 physician-patient privilege is to protect the patient — never to shield the criminal.
I come now to the main issue- May the People under any circumstances invoke the privilege? The answer is obvious. The same reasons which deny to the defendant the right to invoke his victim’s privilege prevent the People from involdng the complainant’s privilege. The privilege is that of the patient and the patient alone may claim it.
The only case in any jurisdiction on that point is People v. Benham (30 Misc. 466) discussed supra. The court there ruled that the District Attorney may not invoke the victim’s privilege. There are cases in other jurisdictions which hold that under similar circumstances the prosecutor may not invoke the attorney-client privilege (State v. Dunkley, 85 Utah 546; State v. Madden, 161 Minn. 132).

I rule that under no circumstances may the People invoice the physician-patient privilege.

My ruling in this respect rests upon firmer ground than the issue of privilege. The People may not in any criminal case withhold evidence which could conceivably disprove or tend to disprove the defendant’s guilt. If, in the instant case, the hospital record should tend to disprove the defendant’s criminal agency in causing the death of the deceased, such evidence may not be withheld by the People on any claim of privilege or under any other rule of evidence. Such withholding may violate due process under both the State and Federal Constitutions. (Alcorta v. Texas, 355 U. S. 28, supra, and cases cited.) Insofar as rules of evidence are concerned, the People have always been on a different plane than a defendant for that very reason.
The patient may, of course, claim the privilege. Under such circumstances it is for the court to decide whether the claim of privilege should be sustained. Due process is not involved where the patient rather than the prosecution claims the privilege. If the physician’s testimony tends to prove the guilt of the defendant, the court must balance the patient’s privilege against considerations of public justice. Should the court allow the testimony, it is not error. The defendant cannot complain; it is the patient’s privilege, not that of the defendant. But where the physician’s testimony tends to disprove the guilt of the defendant, it is difficult to conceive of any considerations which would warrant the court in sustaining the privilege. The testimony should be allowed. To sustain the privilege under such circumstances could be reversible error.
To sum up, the law is that neither the People nor the defendant in a criminal case may invoke the victim-patient’s privilege. *815 If the patient claims the privilege, it is discretionary with the court to sustain or disallow the claim. If the disclosures incriminate the defendant, the court must balance the patient’s privilege against the public interest in law enforcement. An adverse ruling to the patient’s claim is not error. The patient, not the defendant, is prejudiced thereby. On the other hand, if the disclosure disproves the guilt of the defendant, the patient’s claim should ordinarily be overruled. Disallowing the disclosure may constitute reversible error.
III.

Medical Examiner Report of Autopsy.

Defendant also seeks inspection of certain portions of the medical examiner’s report with respect to his findings and conclusions.
Section 879 of the New York City Charter provides: “ It shall be the duty of the chief medical examiner to keep full and complete records in such form as may be provided by law. The chief medical examiner shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality, and such records shall not be open to public inspection.” (Italics mine.)
Under section 893 of the New York City Charter (formerly Greater New York Charter, § 1545), the report of the medical examiner would be a public record unless the specific exception italicized makes it otherwise.
It is interesting to trace the source of the exception.
Sections 773 to 790 of the Code of Criminal Procedure set forth the duty of coroners. For many years the coroner was an elected official of each borough of the City of New York (Greater New York Charter of 1901, § 1570). The aforesaid sections of the Criminal Code were applicable to coroners elected in the City of New York.
Section 5-a of the Public Health Law was enacted in 1913. By chapter 166 of the Laws of 1944 it was transferred to the Code of Criminal Procedure as section 778-a. It regulated and controlled the performance of all autopsies in the State of New York (including New York City). In part, the section then and now provides: ‘ and a copy thereof shall be duly filed, within ten days with the coroner of the county * * * and it shall thereupon become a matter of public record which shall be open to the inspection and transcription of and by one affected or likely to be affected, in a civil or criminal action, by its contents, *816 upon an order of a court of record or of a justice of the supreme court. It shall be the duty of any surgeon performing such an autopsy * * * to permit the attendance, as a matter of right, of a person, or the medical representative of such person, likely to be the defendant * * * in a civil or criminal action ”, etc.
The Greater New York Charter of 1901 providing for the office of coroner contained no contrary provision. , Therefore the coroners of the City of New York were subject to the provisions of section 778-a of the Code of Criminal Procedure and its predecessor, section 5-a of the Pjublic Health Law. Thus under the New York City Charter and section 778-a of the Code of Criminal Procedure, the autopsy report was a public record available on order of the court. Further, the section specifically provided for the presence of a defendant at the autopsy.
In 1915 (L. 1915, ch. 284) the elected offices of coroner were abolished and a city-wide office of chief medical examiner substituted therefor. Most of the duties of the coroner, including the performance of autopsies, were transferred to the medical examiner. That chapter added section 1571-c to the Greater New York Charter. That section was the predecessor to present charter section 879. The old section provided: “ § 1571-c. It shall be the duty of the office of medical examiner to keep full and complete records. Such records shall be kept in the office, properly indexed, stating the name, if known, of every such person, the place where the body was found and the date of death. To the record of each case shall be attached the original report of the medical examiner and the detailed findings of the autopsy, if any. The office shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality. All other records shall be open to public inspection as provided in section fifteen hundred and forty-five.”
When the New York City Charter of 1936 was adopted, the above section, modified as it now reads, was included as present section 879. Both the old and new sections provide that only those autopsies where criminality is indicated shall “ not be open to public inspection ”. There was no intent to amend or modify old section 1571-c by new section 879. (See New York City Charter, § 982.)
The legislative intent is clear. The New York City Charter provision was not intended to preclude a defendant from inspecting the medical examiner’s report of his autopsy. In all counties outside New York City such autopsy reports are spe *817 cifieally made available to the defendant by order of a court (Code Crim. Pro., § 778-a). The Legislature did not intend to establish one rule for New York City and another for the rest of the State. It intended that a medical examiner’s report indicating criminality shall be kept secret from the general public. The Charter provision is another safeguard devised by the Legislature to protect the rights of the accused. “ Too many safeguards cannot be devised to protect the innocent in that most valuable of all earthly possessions, a good name and an unblemished reputation, and we cannot ignore the fact if we would that serious injury in greater or less degree is sustained by every person accused of committing a crime, even though his complete innocence may thereafter be fully established.” (People v. Molineux, 27 Misc. 60, 63.)
Autopsy reports where no evidence of criminality is indicated are public records available to all. Where criminality is indicated, such reports are not available to the public but are available to any defendant by order of a court. (Code Crim. Pro., § 778-a.) The Charter provision (§ 879) is not inconsistent with the Criminal Code provision (Code Crim. Pro., § 778-a). The 1936 Charter specifically provides that all general laws applicable to the City of New York are not repealed or superseded unless the Charter provision is inconsistent with said general law. (New York City Charter, § 982.)
I rule that the defendant may, in the discretion of the court, be granted an inspection of certain portions of the medical examiner’s report relating to the autopsy.
* # #
The defendant may subpoena the hospital records and medical examiner’s report. The subpoena shall direct that such records be delivered to the court. The defendant under the supervision of the court may examine and make copies of such portions of these records as the court may permit- (Matter of Bradshow [State of New York], 5 A D 2d 511 [App. Div., 3d Dept., April 28, 1958].)
The defendant has demonstrated to my satisfaction that there is evidence in the possession and control of the prosecution favorable to the defendant. (People v. Marshall, 5 A D 2d 352 [App. Div., 3d Dept., March 27, 1958].)